732 A.2d 533 (1999)
323 N.J. Super. 127
Nancy MEDFORD and David Medford, Plaintiffs-Respondents,
v.
Doreen DUGGAN and Michael P. Duggan, Defendants/Third-Party Plaintiffs/Appellants,
v.
Rossi Ranch, Lynn Foster, John Doe 1-10 and ABC Companies, 1-10, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1999.
Decided July 9, 1999.
*534 John M. Kearney, for defendants/third-party plaintiffs-appellants (Sellar, Richardson, P.C., attorneys, Roseland; Mr. Kearney, of counsel and on the brief; Julia C. Talarick, Edgewater, on the brief).
Jonathan E. Levitt, Roseland, for plaintiffs-respondents (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Mr. Levitt and Charles X. Gormally, on the brief).
Before Judges BROCHIN, KLEINER and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
Pursuant to leave granted, defendants Doreen Duggan and Michael P. Duggan appeal from an interlocutory order of the Law Division requiring their attorney to provide the attorney for plaintiffs Nancy Medford and David Medford with copies of statements made by defendant Doreen Duggan and a non-party witness, Edith Wisniewski, to defendants' insurance carrier. We affirm in part and reverse in part.
Plaintiffs allege that on December 8, 1994, defendants' dog left defendants' property, crossed the street, barked and caused a horse that plaintiff Nancy Medford was riding to rear up and throw her. On December 5, 1996, almost two years after the incident, Nancy Medford filed suit against defendants seeking damages for the injuries she sustained when thrown from her horse. David Medford, her husband, *535 filed a per quod claim. Plaintiffs allege that defendants negligently controlled their dog. The complaint was served upon defendants on January 14, 1997. On that same date Doreen Duggan telephoned her insurance carrier, Amica Mutual Insurance Company (Amica), to advise them that suit had been filed. She also advised Amica that Ms. Wisniewski was a witness. Shortly thereafter the summons and complaint were sent to Amica.
In opposition to plaintiffs' motion for the production of statements of Doreen Duggan and Wisniewski, Amica supplied the certification of Lisa DeCubellis, a litigation supervisor, asserting that the statements were obtained in contemplation of Amica's defense of the law suit. Shortly after the statements were obtained, DeCubellis asserted that she forwarded the summons and complaint to defense counsel for an answer to be filed on behalf of defendants.
Doreen Duggan was deposed on April 7, 1998. She testified that she was at home on December 8, 1994, with her daughter and Wisniewski. She said Wisniewski was hanging curtains in the window of one of the upstairs rooms. The dog was outside. She said that at the time of the incident Wisniewski yelled to her to either open the door or go out the door. She said she looked out the front door and saw a horse chasing her dog in circles on her front lawn. She observed a woman chasing the horse who asked her to call for help since there was a rider down. She did not know whether Wisniewski saw the person, presumably Nancy Medford, thrown from the horse or any of the preceding events. She then said that Wisniewski told her that the horse was chasing the dog around the front lawn, observing "that's to the best of my memory, it was years ago".
Wisniewski was deposed on July 8, 1998. She said she was upstairs in the Duggan home working at a window and saw a horse run into the front yard with a woman running after it. When asked if she saw the dog outside at that time she responded: "No. Then again, it's been a long time. I can't remember what happened last month". She could not recall whether she saw the dog outside at the time she observed the horse but knew she had given a statement to Duggan's insurance carrier at about the time of the event but could not find the copy. She explained that shortly after being served with the deposition subpoena, she received a telephone call from an attorney who asked her some questions regarding the incident. She advised him that she wanted a copy of her statement to Amica since "everything is not very clear in my mind what exactly happened". Although she assumed the dog was outside at the time of the incident, she was not sure. At the conclusion of the deposition she told plaintiffs' attorney that if she found her copy of her statement to Amica, she would provide counsel with a copy. Thereafter, plaintiffs' attorney asked defendants' attorney to supply a copy of Wisniewski's statement to Amica. Defense counsel refused to supply a copy of the statement contending it was "clearly privileged work-product".
Plaintiffs filed a motion seeking an order compelling defendants to turn over the statements given by Doreen Duggan and Wisniewski to Amica. Relying on Payton v. N.J. Turnpike Authority, 148 N.J. 524, 691 A.2d 321 (1997), the motion judge concluded that the statements were obtained as the result of a routine investigation and were not prepared in anticipation of litigation. In addition, the motion judge concluded that there was no showing that Duggan or Wisniewski believed the statements were confidential. Moreover, the motion judge concluded that there was substantial need for the Wisniewski statement in light of her lack of a clear recollection of the incident at the time of her deposition.
In this appeal defendants advance the following arguments: (1) the motion judge erred in concluding that statements obtained by an insurance carrier after suit was commenced are not statements prepared *536 in anticipation of litigation protected by the work-product privilege; (2) the motion judge failed to apply the two-part test of "substantial need" and "undue hardship" as required by R. 4:10-2(c); and (3) the motion judge's conclusion that there was no reasonable expectation of confidentiality is inapplicable to the work-product privilege.
Our rules of discovery are designed to eliminate, as far as possible, concealment and surprise at trial so that cases are decided upon their merits rather than the skill and maneuvering of counsel. Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 512, 655 A.2d 1368 (1995). As far back as 1951, Chief Justice Vanderbilt observed that the purpose of discovery is to insure that the outcome of litigation depends upon its merits rather than on the craftiness of the parties or guile of their counsel. Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 338, 78 A.2d 705 (1951). Justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts. Jenkins v. Rainner, 69 N.J. 50, 56, 350 A.2d 473 (1976). There is an inherent tension between our policy of promoting full disclosure so that each party has the opportunity to discover facts that may be reasonably calculated to lead to the discovery of admissible evidence and R. 4:10-2(c), the work-product rule, which sets forth a qualified privilege regarding discovery of documents or other tangible things prepared in anticipation of litigation or for trial. In promulgating R. 4:10-2(c), we have implicitly determined that the broad scope of permissible discovery available pursuant to R. 4:10-2(a) is subordinate to the need to protect from discovery documents and tangible things prepared in anticipation of litigation or for trial unless the party seeking discovery can satisfy a two-pronged test: (1) substantial need of the materials in the preparation of the case, and (2) an inability, without undue hardship, to obtain the substantial equivalent of the materials by other means. See R. 4:10-2(c). The rule further provides that if discovery is ordered, the court must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Moreover, the rule is not limited to documents prepared by an attorney. Documents or tangible things prepared by a consultant, surety, indemnitor, insurer, or agent also fall within the protection of the rule provided they are prepared in anticipation of litigation or for trial. Ibid.
We begin our analysis with the observation that the disposition of discovery issues is left to the sound discretion of the trial court. Its determination of these issues are entitled to deference in the absence of a mistaken exercise of discretion. Payton v. New Jersey Turnpike Authority, supra, 148 N.J. at 559, 691 A.2d 321. However, deference is inappropriate if the court's determination is based on a mistaken understanding of the applicable law. Ibid.
When a request for discovery is resisted based upon a contention that the items sought are work-product, the court must make a threshold determination of whether the items sought were, in fact, prepared in anticipation of litigation or for trial. Our research has failed to disclose a reported opinion in New Jersey considering this threshold determination of when a statement by a witness taken by an insurer is obtained in anticipation of litigation. The issue has received disparate treatment in other jurisdictions. See Hall v. Goodwin, 775 P.2d 291 (Okla.1989) (statement of witness obtained by insurance carrier's attorney before suit was filed is not obtained in anticipation of litigation and is not work-product); DeMoss Rexall Drugs v. Dobson, 540 N.E.2d 655 (Ind.App.1989) (statements taken to enable insurer to obtain details of claim and make an initial determination of its position with respect to the claim is not obtained in anticipation of litigation and is discoverable); Henry *537 Enterprises, Inc. v. Smith, 225 Kan. 615, 592 P.2d 915 (1979) (statements of witnesses taken by insurer prior to commencement of litigation are discoverable since not obtained in anticipation of litigation); National Tank Company v. Brotherton, 851 S.W.2d 193 (Tex.1993) (when the circumstances surrounding an investigation indicate to a reasonable person that there is a substantial chance of litigation and the party seeking to invoke the privilege believes in good faith that there is a substantial chance that litigation will ensue, the statements are taken in anticipation of litigation and are non-discoverable); Ashmead v. Harris, 336 N.W.2d 197 (Iowa 1983) (routine investigation of an accident by an insurer is obtained in anticipation of litigation since the insurer's business is to prepare for litigation); Heidebrink v. Moriwaki, 104 Wash.2d 392, 706 P.2d 212 (1985) (statements made by an insured to an insurer following an automobile accident are protected from discovery); Fireman's Fund v. McAlpine, 120 R.I. 744, 391 A.2d 84 (1978) (statements taken by insurance investigators shortly after an accident are in anticipation of litigation since in our litigious society an insurer can reasonably assume that an accident will result in litigation). See also Harriman v. Maddocks, 518 A.2d 1027 (Me.1986).
Other courts that have dealt with the issue have held that since insurance companies have a routine duty to investigate accidents, such pre-litigation materials are not prepared in anticipation of litigation but are prepared in the ordinary course of business absent unique circumstances showing the contrary. Schmidt v. California State Auto., Ass'n., 127 F.R.D. 182, 184 (D.Nev.1989). See also Fann v. Giant Food, Inc., 115 F.R.D. 593, 596 (D.D.C.1987), recons. denied, 1987 WL 12370 (D.D.C.1987) (work-product privilege does not apply to statements obtained in the regular course of compiler's business rather than specifically for litigation, even if it is apparent that a party may soon resort to litigation).
Still other courts have adopted a case-by-case approach, taking into consideration various factors to determine whether documents in an insurance claim file were prepared in anticipation of litigation. See Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir.1993) (in considering the nature of the document and the factual situation of the case, if the document can fairly be said to have been prepared or obtained because of the prospect of litigation, it is protected by the work-product privilege); see also Askew v. Hardman, 918 P.2d 469, 474 (Utah 1996); Spaulding v. Denton, 68 F.R.D. 342 (D.Del.1975); Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771 (M.D.Pa.1985); Haynes v. Anderson, 597 So.2d 615, 619 (Miss.1992).
We believe the better approach is to adopt a case-by-case, fact-sensitive analysis rather than to establish a bright-line rule. If the dominant purpose in obtaining a statement is because of the potential for litigation, the qualified work-product privilege of R. 4:10-2(c) applies. Here, unquestionably, the statements were obtained in anticipation of litigation. In fact, they were obtained after litigation was commenced because it appears that the first notice the insurer had of the incident was the Duggans' notice that they had been served with a summons and complaint. Thus, the statements were obtained not only in anticipation of litigation but because of it.
In ordering discovery of the statements, the motion judge relied on Payton v. New Jersey Turnpike Authority, supra, and concluded that the privilege does not apply when the insurance carrier performs a routine investigation required by the file. We disagree with that analysis. Payton required consideration of the attorney-client privilege, holding that when an attorney conducts an investigation, not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose, the attorney-client privilege is inapplicable. Id. at 551, 691 *538 A.2d 321. That principle obtains even if litigation may eventually arise from the subject of the attorney's activities. Thus, since the purpose there was simply to assist in enforcing defendant's anti-harassment policy or complying with its legal duty to investigate and to remedy allegations of sexual harassment, the privilege did not apply. Here, unlike Payton, the investigation was undertaken after suit was commenced and clearly was in anticipation of litigation. Moreover, Payton involved the attorney-client privilege, not, as here, claims of work-product.
The motion judge also required disclosure because there was no indication that either Doreen Duggan or Wisniewski expected their statements to remain confidential. While that may be a germane consideration in analyzing whether the attorney-client privilege applies, see State v. Schubert, 235 N.J.Super. 212, 220, 561 A.2d 1186 (App.Div.1989), certif. denied, 121 N.J. 597, 583 A.2d 302 (1990), cert. denied, 496 U.S. 911, 110 S.Ct. 2600, 110 L.Ed.2d 280 (1990), it has no relevance in considering a claim of privilege under R. 4:10-2(c).
The motion judge further relied on Branca v. Shore Memorial Hosp., 182 N.J.Super. 315, 440 A.2d 1165 (Law Div. 1981) in granting disclosure. There, the Law Division judge, without making the required two-pronged analysis required by R. 4:10-2(c), ordered discovery, finding there was inequality between the parties with respect to gathering accurate statements. The court cited Werkheiser v. T.E. Warren, Inc., 142 N.J.Super. 405, 361 A.2d 603 (Law Div.1976) in reaching this rationale. But in Werkheiser, supra, as in Branca, supra, 182 N.J.Super. 315, 440 A.2d 1165 (Law Div.1981), the judge merely determined that good cause existed for the disclosure of the statements without engaging in the two-pronged analysis mandated by R. 4:10-2(c). See also Wagi v. Silver Ridge Park West, 243 N.J.Super. 547, 559, 580 A.2d 1093 (Law Div. 1989), in which Judge Clyne correctly pointed out that R. 4:10-2(c) does not make reference to "good cause" as a basis for disclosure of witnesses' statements. Rather, in order to overcome the work-product privilege the moving party must establish: (1) that he has substantial need of the requested documents; and (2) that he is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means. We agree with that analysis. The first prong is always satisfied when a party seeks discovery of statements of another party or of a witness. A prior statement is extremely helpful in cross-examining a witness. Cross-examination, in an effort to impeach the credibility of a witness, is one of the most effective tools available to a lawyer in seeking to ferret out the truth. The real question is whether the party seeking discovery can satisfy the second prong, the inability to obtain the substantial equivalent of materials by other means. After all, the person who gave the statement may always be deposed. Moreover, the deposition may often constitute the substantial equivalent of the prior statement. Thus, after the deposition is taken, the court is better able to determine whether the second prong has been satisfied.
With these principles in mind, we conclude that plaintiffs have not demonstrated that they are unable to obtain the substantial equivalent of the statement given by Doreen Duggan to her insurance investigator. She has been deposed and has essentially expressed a clear recollection of the events in question. Under these circumstances, the deposition constitutes the substantial equivalent of her prior statement. Therefore, plaintiffs have not satisfied the second prong of R. 4:10-2(c). Consequently, we reverse that portion of the order requiring disclosure of Doreen Duggan's statement. The motion judge's determination is not entitled to deference since it was based on an incorrect interpretation of the applicable law.
*539 On the other hand, Wisniewski, although apparently able to give some details regarding the incident, nevertheless professed an inability to recall recent events occurring a month prior. Here, the event occurred nearly four years before her deposition. Although we recognize that her statement to the insurer was given only approximately six months prior to her deposition, we cannot conclude that her deposition, under these circumstances, constituted the substantial equivalent of her statement. Thus, although we disagree with the motion judge's analysis, nevertheless, we conclude that she correctly ordered the disclosure of Wisniewski's statement, since plaintiff did, in fact, demonstrate substantial need for production of the statement and an inability, without undue hardship, to obtain its substantial equivalent by other means. We, therefore, affirm that portion of the order. See Ellison v. Schenck, Price, Smith & King, 280 N.J.Super. 169, 180, 654 A.2d 1024 (App. Div.), certif. denied, 142 N.J. 516, 665 A.2d 1109 (1957); (an order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it); Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175, 238 A.2d 457 (1968) (if the result reached by the trial court is correct, the fact that it was decided on an incorrect basis will not stand in the way of an affirmance).[1]
We recognize, as our dissenting colleague points out, that in Dinter v. Sears, Roebuck and Co., 252 N.J.Super. 84, 99, 599 A.2d 528 (App.Div.1991), we held that when a fact witness testifies at trial for an adverse party the factual statement of that witness must be produced on demand, at trial, for use in cross-examination as a potential tool for impeachment of credibility. However, we conclude that a requirement that all statements made to an insurance carrier must be provided in the discovery process without the necessary showing of an inability without undue hardship to obtain the substantial equivalent of the statement by other means would eviscerate R. 4:10-2(c). See also N.J.R.E. 612 (if a witness, while testifying, uses a writing to refresh recollection, the adverse party is entitled to have that writing produced for inspection and use in cross-examining the witness).
We conclude by observing that perhaps the time has come for reconsideration of R. 4:10-2(c). The purpose of the rule appears to be the striking of an appropriate balance between full disclosure and protection of the adversary process. To some extent, it subordinates the concept of full disclosure to protection of the adversary process. Perhaps that notion is outdated. We have liberal rules regarding discovery because we believe a full and complete disclosure advances the interests of justice in ensuring that cases are decided on their merits rather than the skill and craft of an investigator. Disclosure of prior statements advances the search for the truth, which is what a trial is supposed to accomplish. Any rule that inhibits full disclosure frustrates that goal. Providing the cross-examiner with a prior statement of the witness facilitates cross-examination and, therefore, has a salutary purpose. It may be that the search for the truth is better advanced by making materials obtained in anticipation of litigation discoverable subject to the obligation of the court to protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation by way of an appropriate protective order. We suggest the issue be considered by the *540 Civil Practice Committee of the Supreme Court so that the views of civil practitioners and the civil bench may be exchanged and a consensus forged. It may very well be that no change will be recommended. However, we believe the bench and bar will be served by full discussion and consideration as to whether the rule, in its present form, should be retained.
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
BROCHIN, J.A.D., concurring in part and dissenting in part.
I agree that both Ms. Wiesnewski's and Ms. Medford's written statements to an investigator for defendants' insurer were "prepared in anticipation of litigation or for trial" by or for the defendants' insurer and are therefore entitled to the qualified privilege described in R. 4:10-2(c). I also agree that the Law Division was correct when it ordered defendants to provide a copy of Ms. Wiesnewski's statement to plaintiffs. But I would hold that Ms. Medford's statement must also be disclosed.
Twenty-three years ago, our Supreme Court wrote in Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976):
Much of what was traditionally included as non-discoverable "work product" has in recent years been stripped of its absolute protection. See Pressler, Current N.J. Court Rules, Comment R. 4:10-2. See also "Developments in the Law-Discovery," 74 Harv. L. Rev. 940, 1027-1046 (1961). So it is that now one is hard put to conceive of any non-privileged relevant material which enjoys an unqualified protection against discovery, that favored status of absolute immunity being reserved for "mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation." See Pressler, Current N.J. Court Rules, Comment R. 4:10-2.
Consistently with Jenkins, we held in Dinter v. Sears, Roebuck & Co., 252 N.J.Super. 84, 100, 599 A.2d 528 (App. Div. 1991), that "where a fact witness testifies for an adverse party, the factual statement of that witness must be produced on demand for use in cross-examination as a potential tool for impeachment of credibility." The premise of that holding is that the potential value of such a statement for cross-examining the declarant establishes that the party seeking disclosure "has substantial need of the materials in preparation of the case" and that the uniqueness of a witness's own statement establishes that the adversary "is unable ... to obtain the substantial equivalent by other means." R. 4:10-2(c); cf. Jenkins v. Rainner, supra. In my view, this premise is valid and applicable whether the declarant of the statement is to be examined for the first time at trial or is first to be interrogated in a pretrial deposition that may be used during the trial. See R. 4:16-1.
I would affirm the order appealed from in its entirety.
NOTES
[1] We also note that Wisniewski stated at her deposition that she had asked the insurance carrier for a copy of her statement and was willing to turn it over to plaintiffs' attorney. Under R. 4:10-2(c) she has an absolute right to obtain the statement from the insurance carrier. At that point, she has every right to turn it over to plaintiffs' attorney if she so desires. The rule does not require a witness to make the required showing in order to obtain a statement concerning the action or subject matter previously made by that person.