NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0232-18T1

CAROLINE PALADINO and
ROBERT PALADINO,

    Plaintiffs-Respondents,

v.

AULETTO ENTERPRISES, INC.
t/a AULETTO CATERERS,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

June 6, 2019

APPELLATE DIVISION

Submitted January 15, 2019 – Decided June 6, 2019

Before Judges Rothstadt, Gilson, and Natali.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2574-17.

Landman Corsi Ballaine & Ford PC, attorneys for appellant (Gerald T. Ford, JonCarlo E. Villegas, and Kristina M. Rogan, on the briefs).

Law Office of Andrew A. Ballerini, attorneys for respondent (Richard J. Talbot, on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

In this appeal we clarify the standard for evaluating a claim of the work-product privilege. Consistent with the language of Rule 4:10-2(c), we hold that there is no per se or presumptive rule that materials prepared or collected before litigation are not prepared in anticipation of litigation. Instead, as set forth in Rule 4:10-2(c), there is a multi-part, fact-specific test. The first inquiry is whether the materials were prepared or collected in anticipation of litigation or trial by another party or that party's representative. If so, to obtain the materials, a party must satisfy a two-part standard. The party seeking the materials must (1) show a substantial need for the discovery, and (2) demonstrate that he or she is unable, without undue hardship, to obtain the substantial equivalent of the materials.

On leave granted, defendant appeals from an April 13, 2018 order that compelled it to produce photographs and recorded witness statements taken and obtained by an investigator for defendant's insurance carrier before a complaint had been filed and before defense counsel was retained. The trial court ordered the production of those materials, essentially reasoning that because there was no pending litigation, the insurance carrier was not acting in anticipation of litigation. We reject that analysis as inconsistent with Rule 4:10-2(c). Accordingly, we reverse the order compelling discovery and remand for an analysis under the standard set forth in this opinion.

A-0232-18T1

I.

We discern the facts and procedural history from the record developed on the motion to compel discovery. On October 9, 2015, plaintiff Caroline Paladino was a guest at a wedding reception at defendant's catering facility. As she was walking down a staircase, she fell and injured her left knee, lower back, and right ankle.

Plaintiff immediately reported her accident to defendant, and that same day, defendant prepared an accident incident report. Defendant had general liability insurance, and shortly after the accident, gave notice to its insurer. The insurer then retained an investigator.

Two weeks after the accident, on October 22, 2015, a senior claims examiner for defendant's insurer spoke with plaintiff about the accident. That same day, the claims examiner sent plaintiff a letter advising her that an investigator was looking into the accident. The claims examiner then requested the investigator to photograph the accident scene and obtain statements from plaintiff and representatives of defendant.

The claims examiner later certified that her purpose in retaining the investigator was to "prepare a defense for [defendant] in the event that [plaintiff] filed a lawsuit." The claims examiner also certified that the insurer was not

disputing coverage and did not hire the investigator to look into whether the insurer owed coverage to defendant.

The investigator arranged to meet with and take a recorded statement from plaintiff on October 26, 2015. On the day of the appointment, the investigator was contacted by an attorney who informed him that he had been retained by plaintiff and the appointment with plaintiff was cancelled. The next day, plaintiff's counsel sent a letter informing the insurance carrier that he was representing plaintiff in connection with the fall.

On October 26, 2015, the investigator inspected defendant's catering facility, took photographs of the staircase, and prepared a diagram of the accident scene. The investigator also obtained recorded oral statements from two of defendant's employees. Approximately one week later, on November 1, 2015, the investigator obtained a recorded oral statement from a third employee of defendant.

On December 3, 2015, plaintiff's counsel and a photographer visited defendant's facility. They measured, inspected, and photographed the staircase where plaintiff had fallen. The following month, in January 2016, defendant's insurance carrier provided plaintiff's counsel with a copy of video surveillance that had captured plaintiff falling on the staircase. Plaintiff's counsel was also provided with a copy of the incident report prepared on the day of the accident.

4

On June 26, 2017, plaintiff and her husband filed suit against defendant. Plaintiff alleged that defendant was liable for the injuries she suffered because defendant had been negligent. Plaintiff also alleged that defendant had breached its express and implied warranties and had not properly maintained its property. Her husband alleged loss of consortium.

In August 2017, defendant filed an answer. Thereafter, in response to interrogatories, defendant disclosed that the investigator had taken photographs of the staircase where plaintiff fell, had prepared a diagram, and had obtained recorded statements from three of defendant's employees. Defendant represented that none of those employees witnessed plaintiff's fall. Defendant did not produce the photographs, diagram, or statements, asserting that they were protected by the work-product privilege.

In March 2018, plaintiff filed a motion to compel the production of the photographs and the recorded statements by defendant's three employees. Plaintiff had initially also sought the diagram prepared by the investigator, but later withdrew that request.

Without hearing oral argument, the trial court granted plaintiff's motion in an order entered on April 13, 2018. That same day, the court placed its reasons for that order on the record. In its oral decision, the trial court relied on Pfender v. Torres, 336 N.J. Super. 379 (App. Div. 2001), and reasoned that

because the photographs and statements were obtained before litigation, the insurer "may have" had interests apart from protecting its insured's rights. Thus, the trial court ordered the photographs and statements produced.

Defendant sought leave to appeal the order compelling the production. We denied leave, but the Supreme Court granted leave to appeal and remanded the appeal to us "to consider [it] on the merits." Paladino v. Auletto Enters., Inc., 234 N.J. 576 (2018).

## II.

On this appeal, defendant makes two arguments. First, it contends that we should reject the rationale of Pfender and, instead, adopt the reasoning set forth in Medford v. Duggan, 323 N.J. Super. 127 (App. Div. 1999). Second, defendant argues that, applying the standard set forth in Medford, we should reverse the trial court because plaintiff did not satisfy the requirements of Rule 4:10-2(c).

## A.

We begin with an overview of the work-product doctrine and Rule 4:10-2(c). Initially, the doctrine and rule should be understood as exceptions to New Jersey's general policy of encouraging full and open discovery of all relevant information. In most situations, parties to litigation have the right to discovery

A-0232-18T1

of all relevant information concerning the action. See Rule 4:10-2(a); Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 80 (2017).

There are, however, exceptions to that general rule. Under one exception, a party may withhold "privileged" information. In that regard, Rule 4:10-2(a) states in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

One of the recognized privileges is the work-product doctrine. See O'Boyle v. Borough of Longport, 218 N.J. 168, 188 (2014). That doctrine was first recognized by the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1947). "In Hickman, the owners and underwriters of a tug boat hired a law firm to defend against potential litigation after the boat sank and five crewmembers drowned." O'Boyle, 218 N.J. at 188 (citing Hickman, 329 U.S. at 498). One of the lawyers who had been hired "interviewed survivors and prepared a report based on his notes of the interviews." Ibid. (citing Hickman, 329 U.S. at 498-99). "The Court protected those documents from discovery,

concluding that such materials 'fall[] outside the arena of discovery and contravene[] the public policy underlying the orderly prosecution and defense of legal claims.'" Ibid. (alterations in original) (quoting Hickman, 329 U.S. at 510).

The Court reasoned that lawyers need to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. at 189 (quoting Hickman, 329 U.S. at 510). The Court also reasoned that without adequate protection of an attorney's work product, a client's best interests would be undermined. Ibid. (citing Hickman, 329 U.S. at 511). Consequently, the Court held that "'the general policy against invading the privacy of an attorney's course of preparation' is so important 'that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production.'" Ibid. (quoting Hickman, 329 U.S. at 512).

"New Jersey first codified the work-product doctrine in 1948." Ibid. The rule was broader than the rule recognized by the Court in Hickman. Ibid. (first citing Crisafulli v. Pub. Serv. Coordinated Transp., 7 N.J. Super. 521, 523 (Cty. Ct. 1950); then citing Note, Discovery: New Jersey Work Product Doctrine, 1 Rutgers L.J. 346, 348-49 (1969)).

Currently, the work-product doctrine is memorialized in Rule 4:10-2(c). That rule provides:

[A] party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable under R[ule] 4:10-2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

## B.

Defendant argues that a conflict exists in our case law concerning the scope of the work-product doctrine as discussed in Pfender compared to Medford. Specifically, defendant contends that Pfender essentially establishes a bright-line rule that material prepared by an insurer or an agent of the insurer before litigation is not protected by the work-product doctrine. In contrast, according to defendant, Medford establishes a case-by-case test, under which material prepared by or for an insurer can be protected under the work-product doctrine if it was prepared in anticipation of litigation and the parties seeking the material cannot establish a substantial need for the material.

9

We do not agree with defendant's reading of Pfender and Medford. Instead, we believe that the rationales and holdings of Pfender and Medford can be reconciled. We, however, agree that the rationale and holding of Pfender needs to be clarified and properly understood as consistent with a case-by-case analysis.

In Pfender, the plaintiff "was injured at a gas station when defendant Joseph A. Torres drove his employer's car over her foot." 336 N.J. Super. at 383. Following the accident, Torres gave two tape-recorded statements to an insurance investigator who was acting as an agent for the insurer of Torres's employer. Id. at 384-85. Plaintiff filed a pre-trial motion for discovery of Torres's statements to his employer's insurer. Id. at 383. The trial court denied the motion on the grounds that those statements were protected from discovery by the attorney-client privilege and the work-product doctrine. Ibid.

The case proceeded to trial and Torres testified that he entered the gas station at a speed of approximately five miles per hour and that as he was coming to a stop "something or someone" who he had not previously observed, "stepped out and right into [his] right fender." Id. at 383-84. We directed defense counsel to produce for in camera review the transcripts of the two tape-recorded statements given by Torres. Id. at 384. That review revealed that Torres's statements were inconsistent with his trial testimony. Id. at 385.

On appeal, we reversed. Id. at 394. Initially, we held that the statements to the insurer's investigator were not protected by the attorney-client privilege because no attorney was involved in taking the statements. See id. at 388-89. Moreover, we held that defendant's statements were not privileged because the insurance adjuster's primary motive was to determine whether to provide a defense and the statements were not secured because of the potential for litigation. Id. at 388. Turning to the work-product privilege, we held that defendant Torres's recorded statements were not privileged because the statements described details of the accident that were inconsistent with defendant's trial testimony and plaintiff had no equivalent access to those inconsistent statements. Id. at 391-92.

In Medford, a dog startled a horse, causing the horse to rear up and throw off its rider, plaintiff Nancy Medford. 323 N.J. Super. at 130. Nearly two years later, the plaintiff sued defendant Doreen Duggan, who owned the dog. Ibid. Shortly thereafter, the defendant's insurance carrier obtained statements from an eyewitness to the accident and the defendant. See ibid. Over a year after those statements were taken, the plaintiff deposed the defendant and the eyewitness. See id. at 131.

The plaintiff thereafter filed a pre-trial motion to compel production of the statements given by the defendant and the eyewitness to the defendant's

insurance carrier.  Id. at 132.  The trial court granted the motion, finding the statements were "the result of a routine investigation and were not prepared in anticipation of litigation."  Ibid.  The trial court also found the plaintiff had a substantial need for the eyewitness's statement because that witness could no longer recall the accident.  Ibid.

The defendant appealed that discovery order, and we affirmed in part and reversed in part.  Id. at 132, 139.  We concluded that resolution of the issues required "a case-by-case, fact-sensitive analysis" to determine whether the statements given to the defendant's insurance carrier were taken in anticipation of litigation.  Id. at 135.  On that point, we found the statements at issue were obtained in anticipation of litigation as they were taken almost immediately after the defendant was served with the plaintiff's complaint.  Ibid.

We then considered whether the plaintiff had shown substantial need for the requested documents and whether she was unable, without undue hardship, to obtain the substantial equivalent of the statements by other means.  Id. at 136-37. We concluded that because the defendant had been deposed, and had a clear memory of the events, the plaintiff was not entitled to discovery of the defendant's statement.  Id. at 137.  In contrast, we allowed discovery of the witness's statement because at her deposition she lacked a memory of the events. Id. at 137-38.  Thus, the plaintiff had met her burden of substantial need and an

inability to obtain the substantial equivalent of the statement given by the witness. Id. at 138.

As already noted, we do not read Pfender and Medford to establish inconsistent rules. Instead, both Pfender and Medford should be understood to require a case-by-case, fact-specific analysis. See Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 81-82 (App. Div. 2007) (treating Medford and Pfender as applying the same standard in determining whether a document prepared by an insurance investigator was discoverable). Accordingly, we clarify that there is no per se or presumptive rule that materials prepared or collected before litigation are not prepared in anticipation of litigation. Instead, as set forth in Rule 4:10-2(c), there is a multi-part, fact-specific test. The first inquiry is whether the materials were prepared or collected in anticipation of litigation or trial by another party or that party's representative. See R. 4:10-2(c). The representative can be an "insurer or agent" of the party. Ibid.

If the materials were prepared in anticipation of litigation or trial, to obtain the materials, there is a two-part standard that must then be satisfied. See ibid. The party seeking the materials must (1) show a substantial need for the discovery; and (2) demonstrate that he or she is unable, without undue hardship, to obtain the substantial equivalent of the materials. Ibid. See also Carbis Sales, Inc., 397 N.J. Super. at 82 (first citing Medford, 323 N.J. Super. at 133; then

13

citing Pfender, 336 N.J. Super. at 391). Moreover, if such work-product materials are compelled to be produced, "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." R. 4:10-2(c).

The scope of the work-product doctrine has other limitations. It has long been established that the doctrine only protects documents or prepared materials; accordingly, it does not protect facts. See Hickman, 329 U.S. at 513; R. 4:10-2(c); O'Boyle, 218 N.J. at 188-89. Moreover, in considering statements, the doctrine does not protect statements that are prepared in the normal course of business. See Miller v. J.B. Hunt Transp., Inc., 339 N.J. Super. 144, 148 (App. Div. 2001) (quoting Payton v. N.J. Tpk. Auth., 148 N.J. 524, 554 (1997)). Finally, we have previously clarified that the protection of a statement will usually be lost if the person who gave the statement is later called to testify at trial. See Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 100 (App. Div. 1991). In Dinter, we held that "where a fact witness testifies for an adverse party, the factual statement of that witness must be produced on demand for use in cross-examination as a potential tool for impeachment of credibility." Ibid.

14

## C.

Here, we hold that the trial court failed to apply the appropriate fact-specific analysis required by the work-product doctrine and Rule 4:10-2(c). The trial court here simply reasoned that Pfender stood for the proposition that statements given to investigators hired by an insurer before the commencement of litigation were not protected. The issue called for a more detailed analysis. In that regard, the court needed an appropriate record to allow it to determine whether the photographs and statements were prepared in anticipation of litigation or trial. The court did not need to accept the certification submitted by the insurance claims examiner, but the court did need to evaluate that certification. Furthermore, to reject the certification, the court needed an evidentiary record that would allow it to make such a factual or credibility finding.

Here, the current record does not allow an analysis of the second part of the test. The information in the current record is insufficient for us to determine whether plaintiff showed a substantial need for the discovery and whether she was unable, without undue hardship, to obtain the substantial equivalent of the photographs or statements.

With regard to the photographs, the insurance investigator took photographs of the stairs on October 26, 2015. Plaintiff's counsel and a

A-0232-18T1

photographer took photographs of the stairs on December 3, 2015. There is also a video recording, which shows plaintiff's fall. On remand, the court will need to consider that evidence and make a determination whether there is any showing that there was a change to the staircase that plaintiff was not able to capture in the photographs that her counsel took in December 2015.

The trial court will also need to analyze the witness statements. We have previously held that statements of a party or witness always satisfy the first part of the standard; that is, there is a substantial need for the discovery of such statements. Medford, 323 N.J. Super. at 137. Here, plaintiff acknowledges in her brief that the three witnesses who gave statements to the insured's investigator have not been deposed. Plaintiff therefore should be given the opportunity to conduct those depositions. See ibid. (explaining a deposition "may often constitute the substantial equivalent of [a] prior statement"); Carbis Sales, Inc., 397 N.J. Super. at 82. If the witnesses can recall the facts given in their statements to the insurer's investigator, then plaintiff may not be able to demonstrate that she is unable to obtain the substantial equivalent of the statements. See Medford, 323 N.J. Super. at 137. If, in contrast, any of the witnesses cannot recall the circumstances of the accident, then plaintiff may be able to demonstrate that she is unable to obtain the substantial equivalent of the

statements.  See id. at 137-38.  In that situation, the statement or statements would need to be produced.  See ibid.

In summary, we reverse the April 13, 2018 order compelling defendant to produce photographs and recorded witness statements.  We remand with the direction to conduct further proceedings and apply the appropriate case-by-case, fact-specific analysis to determine whether the photographs and witness statements are within the ambit of the work-product doctrine.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                                    A-0232-18T1