# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0628-25

C.S.,[1]

    Plaintiff-Respondent,

v.

BRICK RECYCLING COMPANY
and PETER DECENZO, JR.,
individually,

    Defendants-Appellants,

and

M.R., individually,

    Defendant.

_____

<table>
<tr><td>

**APPROVED FOR PUBLICATION**

**June 1, 2026**

**APPELLATE DIVISION**

</td></tr>
</table>

> Argued May 18, 2026 – Decided June 1, 2026
>
> Before Judges Sabatino, Natali and Walcott-Henderson.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2444-23.
>
> Elizabeth M. Trottier argued the cause for appellants (Davison Eastman Munoz Paone, PA, attorneys;

---

[1] We refer to the individuals involved in the alleged sexual harassment by their initials. R. 1:38-3(d)(10).

Michael J. Connolly, Brian J. Chabarek and Elizabeth M. Trottier, on the briefs).

Tomaso R. DeNoia argued the cause for respondent (DeNoia, Tambasco & Germann, attorneys; Tomaso R. DeNoia and Thomas DeNoia, on the briefs).

Jennifer D. Fluharty, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jennifer Davenport, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Jennifer D. Fluharty, on the brief).

Colin M. Page argued the cause for amicus curiae New Jersey Chapter of the National Employment Lawyers Association.

Martin W. Aron argued the cause for amicus curiae Academy of New Jersey Management Attorneys (Jackson Lewis PC, attorneys; Martin W. Aron and Richard J. Cino, of counsel and on the brief; Steven C. Schinella, Jr. and Yoksaidy Sutil, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This interlocutory appeal concerns whether certain documents created by a law firm that an employer retained to conduct a workplace investigation are privileged from disclosure to a plaintiff who claimed he had been subjected to sexual harassment by a co-worker.

After being supplied with those documents to enable in camera review, the trial court concluded that none of them were privileged under the principles

of the Supreme Court's seminal opinion in <u>Payton v. New Jersey Tpk. Auth.</u>, 148 N.J. 524 (1997).

Defendants Brick Recycling Company ("the company") and its owner and president, Peter DeCenzo, were granted leave to appeal the order compelling disclosure. Several amici have entered the appeal, expressing varying positions about how <u>Payton</u> should be construed and applied in this setting.

Among other things, a core issue in this appeal is whether defendants waived their attorney-client communications and work-product privileges, either entirely or partially, by allegedly relying on the investigation as an affirmative defense to plaintiff's lawsuit.

For the reasons that follow, we vacate the trial court's order and, subject to our instructions, remand the matter for the court's further consideration of the documents and possible holdbacks or redactions.

I.

The following background is relevant to the appeal. We mention facts and factual allegations, mindful that the case has not been fully litigated or tried.

Plaintiff C.S. was hired by the company in March 2018. He briefly resigned in March 2021, later returning as a part-time employee from November

A-0628-25

2021 until October 2023. Plaintiff worked as a truck driver delivering or picking up metal.

Plaintiff's claims concern his interactions with another employee, co-defendant M.R.[2] M.R.'s job title was that of Corporate Financial Controller responsible for "the efficient management accuracy and integrity of data." Her duties included reviewing and preparing financial statements, cash flow, variance analysis, and negotiating contracts and pricing. Although she was considered a supervisor within the company, M.R. had no authority to hire or fire with respect to plaintiff's position as a truck driver. She worked in the office department.

On June 19, 2023, plaintiff told DeCenzo that he was being "stalked" by M.R. and that M.R. had made unwanted sexual advances to him. Plaintiff also claimed that M.R. had accessed his bank records without his permission and that she had disclosed that private information to another individual.

The following day, June 20, DeCenzo told plaintiff that he was to have no further contact with M.R. and told M.R. the same thing with respect to plaintiff. In response, M.R. left an "angry note" on plaintiff's car later that day. DeCenzo admonished M.R. for leaving the note the following day, June 21.

---

[2] M.R. has not participated in the motion practice or this appeal.

A-0628-25

On August 4, 2023, DeCenzo authorized the law firm of Ruderman & Roth to conduct an investigation into plaintiff's allegations. The investigation was conducted by one of the firm's lawyers, Ellen Horn. Plaintiff resigned from the company while the investigation was still ongoing.

Horn's investigation report was issued on October 17, 2023. The report, which spans forty-five pages, "summarizes interviews with the complainant, witness and the accused, analyzes the information and documentation, and evaluates credibility."

Notably, Horn's report concluded that "it is more likely than not that Ms. [M.R.] engaged in behavior in violation of Brick Recycling's Policy Against Harassment."[3] Horn thus determined that the harassment claim was substantiated.

On October 24, 2023, plaintiff filed a sexual harassment and constructive discharge action in the Law Division under New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -50, against defendants and M.R., also claiming intentional infliction of emotional distress. Defendants filed an answer, listing forty-nine separate affirmative defenses. Pertinently, the sixteenth of those defenses declared that "[d]efendants acted in good faith,

---

[3] That policy is extensive and exceeds 150 pages.

without malice, and with the reasonable belief that their actions were reasonable under the existing facts and circumstances."

Discovery ensued. Subject to a confidentiality order, defendants produced nearly 600 documents, some of which were marked as confidential. Those produced documents included Horn's investigation report, with attachments. They further included an employee manual that prohibited and addressed "all types of abusive, offensive, or harassing behavior." The manual also contained a non-fraternization policy.

Defendants withheld various documents. They created and provided a privilege log, which included the following items: letters from Horn to DeCenzo dated August 4, 2023 and October 17, 2023; a draft agreement prepared by Horn for the company and M.R. to sign; a partial draft of Horn's investigation report; Horn's notes made during a meeting and a telephone call with DeCenzo; Horn's notes made during a re-interview of plaintiff and others; and Horn's retainer agreement with the company with related emails.

Seeking additional documents, plaintiff served a subpoena and deposition notice on the Ruderman law firm. Defendants moved to quash the subpoena and deposition notice. To enable in camera review, defendants supplied the court,

6

A-0628-25

ex parte, with the thirty-six pages of documents it had withheld from plaintiff, along with the privilege log.

After hearing argument on the motion, the trial court orally concluded that none of the withheld documents were privileged from discovery.[4] The court also entered an order denying defendants' motion to quash the subpoena.

Defendants moved for leave to appeal, which we granted. The turnover of the documents was stayed. Meanwhile, the trial court entered a consent order staying the proceedings.

Three organizations have separately participated in the appeal, with our permission, as amici curiae. The National Employment Lawyers Association ("NELA") supports plaintiff and advocates that we affirm the trial court's order mandating production of the documents. In opposition, the Academy of New Jersey Management Attorneys ("ANJMA") sides with defendants and argues for reversal of the disclosure order. Lastly, at our invitation, the Attorney General ("AG"), whose office both brings and defends discrimination claims under the LAD, filed an amicus brief that likewise supports reversal. In addition, although the present litigation is a private case, the AG spotlighted a concern about how

---

[4] Defendants advised the court that a Rule 104 hearing was unnecessary and that an in camera review of the documents would be sufficient.

A-0628-25

Payton is applied to public entities, which may have their own special laws and policies that restrict or otherwise affect disclosure.

II.

A.

As we noted at the outset, Payton has been the seminal New Jersey opinion applicable to these workplace investigation privilege issues for nearly the past three decades. The following context of Payton, and its guidance on the attorney-client communications and work-product privileges, is instructive.

New Jersey's discovery rules are construed liberally in favor of the broad discovery of relevant evidence so long as the evidence is not privileged. Payton, 148 N.J. at 535. The attorney-client privilege applies to communications between a lawyer and client "in the course of that relationship and in professional confidence." N.J.R.E. 504(1); see also N.J.S.A. 2A:84A-20(1). The communication must be made in confidence and for the purpose of obtaining legal advice. Hedden v. Kean Univ., 434 N.J. Super. 1, 10 (App. Div. 2013).

The privilege accords the shield of secrecy with respect to confidential communications made within the attorney-client relationship, in "'as broad a scope as its rationale requires.'" United Jersey Bank v. Wolosoff, 196 N.J.

8

Super. 553, 561-62 (App. Div. 1984) (quoting Ervesun v. Bank of N.Y., 99 N.J. Super. 162, 168 (App. Div. 1968)).  The benefit extends to a corporation, including its officers and employees.  Hedden, 434 N.J. Super. at 11.  Because the privilege results in the suppression of evidence, it is to be strictly construed.  Id. at 12.  While the burden of proof is on the party asserting the privilege, "there is a presumption that a communication made in the lawyer-client relationship has been made in professional confidence."  Ibid.; see also N.J.R.E. 504(3).

Generally, in order to pierce the shield of the attorney-client privilege, there "must be a legitimate need of the party to reach the evidence sought to be shielded.  There must be a showing of relevance and materiality of that evidence to the issue before the court."  In re Kozlov, 79 N.J. 232, 243-44 (1979).  In addition, it must be shown that the information could not be secured from any less-intrusive source.  Id. at 244.

Codified in Rule 4:10-2(c), the work-product doctrine recognizes the need for lawyers to "'work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'"  O'Boyle v. Borough of Longport, 218 N.J. 168, 189 (2014) (quoting Hickman v. Taylor, 329 U.S. 495, 511 (1947)).  The work-product privilege "grow[s] out of the attorney-client privilege."  K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 355 (App.

Div. 2011). The privilege applies to documents prepared in anticipation of litigation or trial. Medford v. Duggan, 323 N.J. Super. 127, 133 (App. Div. 1999). A party may obtain discovery of such material "only upon a showing that the party . . . has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." R. 4:10-2(c).

In Payton, 148 N.J. at 532, an employee sued her employer and two of her supervisors for sexual harassment, alleging that the employer did not respond adequately to her complaints. The employer's equal employment opportunity officer investigated the complaints and disciplined the supervisors. Ibid. Through its in-house counsel, the employer issued a final investigative report four days after the plaintiff filed suit. Id. at 533. The employer claimed, as an affirmative defense, that it had effectively remedied the sexual harassment. Id. at 533-34. The plaintiff sought all documents relating to the investigation. Id. at 534. The employer moved for a protective order and the plaintiff responded by moving to strike the affirmative defense if the employer were not required to produce the documents. Ibid.

The Supreme Court framed the issue in Payton as follows:

> [W]hether various documents and records pertaining to the employer's handling and disposition of the

employee's complaints of sexual harassment, including its internal investigation, may be made available through discovery and the extent to which concerns based on confidentiality and privilege may preclude or limit the discovery of such materials.

[Id. at 532.]

The Court instructed in Payton that, as an initial matter, a trial court must evaluate the relevance of the material sought to the issues in the litigation. Id. at 535. Even if the material is found to be relevant, that can be overcome by the applicability of an evidentiary privilege, such as the attorney-client privilege. Id. at 539.

The Court noted that there is "a fine line" between an attorney who provides legal services to an organization and one who is providing essentially non-legal duties. Id. at 550. Thus, an internal investigation of a sexual harassment claim made by an employer's attorney may be discoverable "when an attorney conducts an investigation not for the purpose of preparing for litigation or providing legal advice, but rather for some other purpose." Id. at 551. In that event, the attorney-client privilege is inapplicable, "even where litigation may eventually arise from the subject of the attorney's activities." Ibid. The Court added:

The key issue regarding the applicability of the privilege in this case is the purpose of the various

A-0628-25

components of the investigation that defendant initiated into plaintiff's allegations of sexual harassment. If the purpose was to provide legal advice or to prepare for litigation, then the privilege applies. However, if the purpose was simply to enforce defendant's anti-harassment policy or to comply with its legal duty to investigate and to remedy the allegations, then the privilege does not apply.

[Ibid.]

Nonetheless, the Court made clear in Payton that the trial court "must evaluate the individual documents at issue in camera to determine what role an attorney may have had in the creation of those documents." Id. at 552 (emphasis added) (italicization removed). The Court further noted that the attorney-client privilege "may apply to portions of the investigation, thus requiring redaction or suppression if effective redaction is impossible." Ibid.

Apart from the attorney-client communications privilege, the Court also addressed the applicability of the work-product doctrine to preclude disclosure. In order for the work-product doctrine to apply, "the materials must have been prepared in anticipation of litigation and not in the ordinary course of business." Id. at 554. The Court held that it was likely that the doctrine did not apply to the employer's appeal in Payton because the investigation was said to have begun months before the litigation commenced even though it concluded after the lawsuit had been brought. Id. at 554-55. In addition, the Court found that

A-0628-25

the plaintiff had demonstrated a need for the documents that could not be replicated by deposition and that the defendant "may have waived the protection of the doctrine by asserting the investigation as an affirmative defense." Id. at 555.

On the subject of waiver, Payton recognized that even where an employer has waived privilege by relying on the undertaking and outcome of an investigation as an affirmative defense, the extent of that waiver may have limits. Id. at 555. In particular, the Court noted that certain documents created or identified in the investigation may be so "tenuously related" to the affirmative defense that they need not be produced in discovery:

> Thus, it appears that defendant, by relying on the affirmative defense of having conducted an effective investigation into plaintiff's allegations, has waived the attorney-client privilege, assuming that the privilege applies to certain documents relating to the investigation. However, the trial court should conduct an in camera review of the materials at issue to determine if the privilege applies to specific documents, and, if so, whether those documents are so tenuously related to the affirmative defense that waiver is overcome despite the assertion of that defense.
>
> [Ibid. (emphasis added) (italicization removed).]

The Court did not define in Payton exactly what it meant by "tenuously related." Moreover, no published opinion or, to our knowledge, any unpublished

A-0628-25

opinion, has defined the term. We presume that the word "related" was intended by the Court to convey the broad concept of relevance embodied in the civil discovery rules such as Rule 4:10-2(a) ("reasonably calculated to lead to the discovery of admissible evidence") and not the somewhat narrower concept of relevance in N.J.R.E. 401 that governs admissibility at trial. The adverb "tenuously," meanwhile, would appear to exclude documents or portions of documents that are too remote or attenuated to the affirmative defense to warrant their disclosure.

In evaluating relatedness and remoteness, we suggest the court performing the in camera review ought to consider whether a document either could substantiate the employer's affirmative defense (by showing the reasonableness or thoroughness of the attorney-led investigation) or, conversely, could impeach the affirmative defense (by showing, say, that the employer unduly curtailed the investigation or undermined the independence or integrity of the attorney's efforts). In other words, the trial court should be attentive to the potential relevance of the item in either direction: supporting the employer's defense or weakening it.

Additionally, a document may contain information that has no (or virtually no) bearing on the investigation or the affirmative defense, such as

 A-0628-25

details about a complaint that was made many years earlier that involved an entirely different form of discrimination, other company personnel, and an inconclusive outcome.

More recently after our Court decided Payton in 1997, case law has illuminated an employer's use of evidence as an affirmative defense to claims under the federal and state antidiscrimination laws. In the companion cases of Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 804-08 (1998), the United States Supreme Court delineated the contours of an employer's affirmative defense under federal Title VII. Thereafter, in Aguas v. State, 220 N.J. 494 (2015), our Court "adopt[ed] the Ellerth/Faragher analysis for supervisor sexual harassment cases in which a hostile work environment is claimed pursuant to the LAD, and no tangible employment action is taken." Id. at 521-23. Under that analysis, the employer in a hostile work environment sexual harassment case may assert as an affirmative defense that (1) it exercised reasonable care to promptly prevent and correct any sexually harassing behavior of which (2) the plaintiff employee unreasonably failed to take advantage. Id. at 499.

That said, we note that Aguas does not discuss Payton or address the discoverability of attorney-conducted workplace investigations. Unlike some of

15

the advocates before us, we do not regard <u>Aguas</u> as adding a gloss to <u>Payton</u> or fundamentally altering its waiver principles. In essence, the trial court conducting an in camera review must consider each withheld document, page-by-page, and (depending on the contents), line-by-line, to assess whether the material appears to be within the scope of the attorney-client or work-product privileges and, if so, whether that material is sufficiently (i.e., not tenuously) related to an employer's affirmative defense to be disclosable.

We appreciate that a trial judge's task in conducting such meticulous in camera review can be time-consuming and tedious, and that the documents in dispute can be voluminous. In that vein, employers must be encouraged to create privilege logs for the court's use that are as detailed as possible, without revealing information that it reasonably and in good faith submits should be shielded from disclosure.

B.

Having addressed these principles, we now turn to the present appeal. We begin by recognizing that defendants have cooperatively turned over to plaintiff the entire investigatory report prepared by Attorney Horn and all of its attachments. Although defendants originally claimed privilege as to twelve items in its log, they reduced the list thereafter to eight items, which we have

16

A-0628-25

previously described above. The trial court referred, albeit briefly and summarily, to each of these eight items in its oral motion ruling and concluded that none of them should be privileged from disclosure.[5]

Certain aspects of the trial court's ruling have been spotlighted by the parties and amici, and they warrant our discussion. To begin with, it appears that the court was under a mistaken impression that the privileges could not be invoked because Horn's investigation had begun several weeks before plaintiff filed suit. That timing, however, doesn't mean that a lawsuit was not reasonably anticipated. As plaintiff claimed, he had been subjected to years of alleged sexual harassment by M.R., and it does not seem likely that his allegations would have been readily abandoned without remedial action or compensation. Payton does not require the initiation of a lawsuit for the privileges to attach, although the timing can be important. 148 N.J. at 551. Here, there is a sufficiently close temporal nexus between the claims, the undertaking of the investigation, and the filing of the complaint to regard Horn as acting in a dual role as both investigator and legal adviser to the company.

---

[5] We reject defendants' supposition that the trial court had not reviewed the eight items in chambers before the motion hearing.

A-0628-25

A second key point, on which none of the amici notably disagree, is that defendants plan on using the Horn investigation as evidence of an affirmative defense of reasonable action, even though the report is not specifically listed as a numbered affirmative defense. As we noted above, affirmative defense number sixteen logically encompasses the defense. At oral argument on the appeal, we invited defendants' attorney to consider whether her clients would wish to abandon such reliance on the investigation to avoid waiver, and counsel respectfully declined to do so. Hence, the situation calls for a waiver analysis.

Unfortunately, the trial court's ruling does not address waiver. In particular, the court did not discuss whether its in camera review identified any items or passages that should not be disclosed or should be redacted because they are only "tenuously"—if at all—related to the affirmative defense. That analysis has yet to be performed.

Next, the trial court's abbreviated oral rulings on each of the eight disputed items do not reflect consideration of whether any portions of the contents should be redacted because they manifestly disclose confidential legal advice. Without being specific here, it seems apparent that some portions of the materials reflect such legal advice that may be unrelated or only tenuously related to the

18

affirmative defense and therefore merit consideration for redaction on a line-by-line basis.

Additionally, we preliminarily question whether Horn's draft report should be disclosed to opposing counsel. By analogy, our court rules and associated case law make draft reports by expert witnesses, which are commonly revised or amplified after consultation with counsel, generally non-discoverable except in situations of substantial need and undue hardship, with the court protecting "against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."[6] See R. 4:10-2(d)(1) (expressing this standard, as qualified by R. 4:10-2(c)); see also Ciesla v. New Jersey Dep't of Health & Sr. Servs., 429 N.J. Super. 127, 141 (App. Div. 2012). At the time of trial, a litigant relies on the finalized version of the report to support a claim or an affirmative defense, not the draft. Although we render no definitive decision on the subject, we believe the trial court should reconsider the propriety of releasing the draft.

Defendants have urged that, at the very least, we revise the trial court's decision to deny the turnover of Horn's notes of her meeting and telephone call with DeCenzo. We reject that categorical request, pending closer line-by-line

---

[6] Quoting R. 4:10-2(c).

scrutiny by the trial court—potentially redacting passages that consist of legal advice and those non-advisory passages that mention facts that may be relevant to the case.

For these and other reasons, we are constrained to remand this matter to the trial court for a renewed, and more fulsome, in camera review of the disputed eight documents, in light of the guidance we have set forth herein. The court shall issue written determinations with its statements of reasons, without prejudice to the right of either party to move to seek further interlocutory appellate review. The in camera review should also extend to any additional documents in the possession of Horn or her law firm. To assist the trial court in its review, plaintiff shall, within twenty days, submit a written proffer explaining how the additional documents, beyond the report itself, could assist in the prosecution of his case. In doing so, plaintiff shall bear in mind that he resigned before the investigation was completed and no further remedial action beneficial to him could have been taken thereafter.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division