770 A.2d 1288 (2001)
339 N.J. Super. 144
Michele MILLER, Plaintiff-Respondent,
v.
J.B. HUNT TRANSPORT, INC. and Durrell Watford, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted March 13, 2001.
Decided April 17, 2001.
*1289 Rawle & Henderson, Marlton, attorneys for appellants (Jon Michael Dumont and Cynthia M. Certo, on the brief).
Richard S. Greenberg, Englwd Cliffs, attorney for respondent (Martin S. Cedzidlo, on the brief).
Before Judges SKILLMAN, CONLEY and LESEMANN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal involves the applicability of the work product privilege to a truck driver's recorded statement taken by the trucking company's litigation attorney shortly after the driver was involved in an accident resulting in personal injuries to the other driver. We conclude that the statement is protected work product because the trucking company's dominant purpose in taking the statement was to prepare for potential litigation and the company had an objectively reasonable basis for anticipating that suit would be brought by the other driver.
At approximately 11:40 a.m. on March 6, 1998, plaintiff was driving her car in a southerly direction on Tonnelle Avenue in North Bergen Township. Defendant Durrell Watford, a truck driver employed by defendant J.B. Hunt Transport, Inc. (Transport), was driving a truck in a northerly direction on the same roadway. Watford suddenly swerved into plaintiff's lane, resulting in a head-on collision.
Watford immediately notified Transport of the accident. That same day, Transport's "Litigation Manager" retained a New Jersey attorney, John Welch, to represent Transport and its driver in connection with the accident. According to the Litigation Manager, she retained Welch because "[a]fter receiving some preliminary information about the accident, including *1290 the fact that one of the involved drivers had been taken to the hospital with apparent facial injuries and multiple fractured bones, I fully anticipated this matter would result in litigation." On the day of the accident, Welch took a statement from Watford that was recorded by a court reporter.
Plaintiff subsequently brought this personal injury action. In response to plaintiff's interrogatories, defendants disclosed the existence of Watford's recorded statement. When plaintiff demanded production of the statement, defendants moved for a protective order, relying upon the work product privilege. The trial court denied the motion, stating in a letter opinion:
Anticipation of litigation in the context of R. 4:10-2(c) requires some action by the potential adverse party putting the party invoking the privilege on notice that litigation is likely as opposed to merely possible.
Defendants filed a motion for reconsideration, asserting both the work-product and attorney-client privileges. This motion was supported by Welch's affidavit which stated that "[d]uring my discussion with Mr. Watford before I began taking his statement, I advised him that I had been retained to represent both him and [Transport] with respect to any claims or suits which may arise concerning the accident which occurred earlier that day." Defendants also submitted an affidavit by Watford, which stated in part:
4. Mr. Welch made it clear to me immediately that he was my attorney and would act to protect my interests in this matter.
5. After Mr. Welch and I had a lengthy discussion about the accident and the potential for litigation, I proceeded to give him a sworn statement in the presence of a court reporter.
6. At the time I gave the statement, I fully believed that this matter would result in some type of legal proceedings, and I spoke to Mr. Welch on March 6, 1998 with the understanding that he was representing me in those proceedings.
The trial court denied the motion. In reaffirming its ruling that the work product privilege does not shield Watford's statement from discovery, the court stated:
Attached to Ms. Alexander's affidavit is a fax transmittal sheet dated March 6, 1998 (accident date) which purports to confirm that Mr. Jack Welch, Esq. had been retained to "fully investigate the above accident and to protect the interests of J.B. Hunt and its driver, Durrell Watford." Taken at face value, these facts do show that Ms. Alexander subjectively believed that litigation would ensue. Under this analysis the statement obtained from Mr. Watford was in fact "in anticipation of litigation." The court is satisfied, however, that this approach is not consistent with both the intent of the court in Medford [v. Duggan, 323 N.J.Super. 127, 732 A.2d 533 (App.Div. 1999)] and the public policy which forms the basis for our rules of discovery.
....
This court holds that in determining whether "the dominant purpose in obtaining a statement is because of potential for litigation," a reviewing judge must find objective plausible evidence that litigation is likely as opposed to merely possible. It is not enough for the party seeking the applicability of the work product doctrine to show that it subjectively believed the potential for litigation.
*1291 The trial court rejected defendants' alternative claim that Watford's statement is protected from disclosure by the attorney-client privilege, because defendants rested this contention on Welch's and Watford's affidavits, which the court said should have been presented at the time of defendants' initial motion for a protective order.
We granted defendants' motion for leave to appeal and now reverse the order requiring defendants to produce Watford's recorded statement. We conclude that Watford's statement was prepared in anticipation of litigation and thus is protected by the work product privilege. This conclusion makes it unnecessary to consider defendants' alternative contention that the statement is protected by the attorney-client privilege.
Rule 4:10-2(c) provides in pertinent part:
[A] party may obtain discovery of documents and tangible things otherwise discoverable under R. 4:10-2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
Rule 4:10-2(c) essentially follows the language of the federal work product rule contained in Fed.R.Civ.P. 26(b)(3), which was derived from Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). See James W. Moore, et al., Moore's Federal Practice § 26.70[2](c) at 26-209 (3d ed.1997). Hickman explains the policy underlying the work product privilege:
In performing his various duties, ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible waysaptly though roughly termed by the Circuit Court of Appeals in this case as the "Work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten....
[Id. at 510-11, 67 S.Ct. at 393, 91 L.Ed. at 462.]
In determining whether a document is protected from disclosure by the work-product privilege, the threshold question is whether the document was "prepared in anticipation of litigation or for trial[.]" R. 4:10-2(c). If a document was prepared "in the ordinary course of business" rather than in anticipation of litigation, it is not entitled to protection as work product. Payton v. New Jersey Tpk. Auth., 148 N.J. 524, 554, 691 A.2d 321 (1997); see also Dinter v. Sears, Roebuck & Co., 252 N.J.Super. 84, 96, 599 A.2d 528 (App.Div.1991) (holding work product privilege inapplicable where record did not support assertion that the statements "were written at the direction of counsel or in preparation for litigation."). However, a document may be found to have been prepared in anticipation of litigation even *1292 though litigation had not been commenced or even threatened when the document was prepared. See In re Sealed Case, 146 F.3d 881, 884-88 (D.C.Cir.1998); Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260-61 (3rd Cir.1993); Springfield Terminal Ry. Co. v. Department of Transp., 754 A.2d 353, 358-59 (Me.2000). As Professor Wright has observed: "Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced." 8 Charles Alan Wright & Richard L. Marcus, Federal Practice & Procedure, § 2024 at 343 (2d ed.1994).
In Medford v. Duggan, supra, 323 N.J.Super. at 135, 732 A.2d 533, this court indicated that the work product privilege may be invoked if "the dominant purpose in obtaining a statement [was] ... the potential for litigation." However, Professor Wright and the Restatement of the Law Governing Lawyers take the position that for a document to be protected by the work product privilege, it not only must have been prepared for the dominant purpose of litigation, but there must also have been an objectively reasonable basis for anticipating litigation. Professor Wright states that "the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Wright, supra, § 2024 at 343. The comment to the Restatement indicates that "[t]he reasonableness of anticipation is determined objectively by considering the factual context in which materials are prepared, the nature of the materials, and the expected role of the lawyer in ensuing litigation." Restatement (Third) of Law Governing Lawyers § 87 cmt. i (1998). Consistent with these authorities, the Third Circuit Court of Appeals has concluded that to assert the work product privilege, the party preparing or ordering preparation of a document must have "belie[ved] that litigation [would] result" and that belief must have been "objectively reasonable." Martin v. Bally's Park Place Hotel & Casino, supra, 983 F.2d at 1260. We agree with this approach and hold that a statement or other document will be considered to have been prepared in anticipation of litigation if the "dominant purpose" in preparing the document was concern about potential litigation and the anticipation of litigation was "objectively reasonable."
Applying this test, it is clear that Watford's statement is attorney work product that is protected by Rule 4:10-2(c). In her affidavit, Transport's litigation manager stated that before she made the decision to retain Welch, she had received preliminary information concerning the accident, including the fact that the other driver had suffered facial injuries and broken bones, and had to be taken to the hospital. Moreover, because Watford immediately reported the accident to both his dispatcher and Transport's safety department, it may be assumed that the litigation manager also was aware that the accident had occurred after Watford crossed over into one of the opposing lanes of traffic and that Watford had received a summons for a traffic violation. Under these circumstances, the litigation manager had an objectively reasonable basis for anticipating that the other driver would bring litigation against Transport and Watford. Furthermore, there is no indication that Welch, as Transport's litigation attorney, had any purpose for taking a recorded statement from Watford other than protecting the interests of Transport and Watford in such anticipated litigation.
*1293 The fact that Watford's statement was taken by an attorney retained by Transport in anticipation of litigation distinguishes this case from Pfender v. Torres, 336 N.J.Super. 379, 765 A.2d 208 (App. Div.), certif. denied, 167 N.J. 637, 772 A.2d 938 (2001), upon which plaintiff relies. The statement of one of the defendants in Pfender was taken by an insurance adjuster retained by the defendants' insurance carrier to investigate the automobile accident which led to the suit. In concluding that the statement was not protected from disclosure by the attorney-client privilege, the court stated:
Legitimate concerns of self-preservation often place [an insurance company] in direct conflict with those whom it insures against liability. The avoidance of fraudulent claims and claims outside the insurance coverage justify careful investigation before undertaking a defense of the insured, as is well-evidenced by the never-ending flow of cases involving denials of liability coverage. Only the incredibly naive would suppose that an insurance company's first concern is anything other than whether it is obliged to provide a defense.... No reasonable person could be unaware of this adversarial aspect of the insurer-insured relationship....
... The key factor for denying the claim of privilege is this: the statement was not taken at the specific direction of the insured's attorney. Indeed, the claim had not even been assigned to an attorney for the insured.... Litigation was not pending, and at that early point the insurance company might well have had interests other than protection of this insured's rights.

[Id. at 387-88, 765 A.2d 208.]
Although the court in Pfender made these comments in discussing the applicability of the attorney-client privilege, the conclusion that an insurance carrier's "first concern" in conducting a post-accident investigation is to determine "whether it is obliged to provide a defense," id. at 388, 765 A.2d 208, also would preclude a finding that the insurance adjuster's "dominant purpose in obtaining a statement" from the insured was "the potential for litigation." Medford v. Duggan, supra, 323 N.J.Super. at 135, 732 A.2d 533. Therefore, such a statement could not be found to have been taken "in anticipation of litigation" and would not be protected from disclosure under Rule 4:10-2(c).[1]
In contrast, Watford's statement was made directly to defendants' attorney to enable him to prepare for anticipated litigation. Thus, Welch's "dominant purpose" in taking the statement, indeed apparently his sole purpose, was "the potential for litigation," Medford v. Duggan, supra, 323 N.J.Super. at 135, 732 A.2d 533, and there was an objectively reasonable basis for anticipating that the accident in which Watford had been involved would result in litigation. Therefore, Watford's statement is protected by the work product privilege provided by Rule 4:10-2(c).
*1294 Plaintiff did not undertake to show that she is entitled to obtain Watford's statement because she has "substantial need" for the statement "in the preparation of [her] case and is unable without undue hardship to obtain the substantial equivalent... by other means." R. 4:10-2(c); see Jenkins v. Rainner, 69 N.J. 50, 55-58, 350 A.2d 473 (1976). In fact, Watford provided a full account of how the accident happened in a deposition taken while this appeal was pending. We of course do not foreclose plaintiff from renewing her request for disclosure of Watford's statement, if she can make a showing of substantial need after further discovery or at trial. In that event, the trial court would be required to consider defendants' claim that the statement is also protected by the attorney-client privilege.
Accordingly, we reverse the order denying defendants' motion for an order protecting Watford's statement from disclosure and remand the case to the trial court.
NOTES
[1] The court in Pfender did not consider whether the insured-defendant's statement was taken in anticipation of litigation. Instead, the court held, in agreement with Dinter v. Sears, Roebuck & Co., supra, 252 N.J.Super. at 100, 599 A.2d 528, and disagreeing with part of the panel's decision in Medford v. Duggan, supra, 323 N.J.Super. at 136-38, 732 A.2d 533, that "the statement of a party to his insurer [describing the accident] is not protected from discovery." 336 N.J.Super. at 392, 765 A.2d 208. Because the statement involved in this case was given to Transport's litigation attorney, Welch, rather than to an insurer or its agent, we have no need to consider this part of Pfender.