799 A.2d 667 (2002)
352 N.J. Super. 109
John TERRELL, Gene Key, and Myron McPherson, Plaintiffs-Respondents,
v.
SCHWEITZER-MAUDUIT INTERNATIONAL, INC., Kimberly Clark corporation and John Does 1 through 50, jointly, severally and individually, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted May 20, 2002.
Decided June 17, 2002.
Stanton, Hughes, Diana, Cerra, Mariani and Margello, P.C., attorneys for defendants-appellants (Patrick M. Stanton and Suzanne M. Cerra, of counsel, Morristown Ms. Cerra, on the briefs).
S. Robert Friedel, Jr., attorneys for plaintiffs-respondents (Mr. Friedel, of counsel and on the brief).
*668 Before Judges PETRELLA, KESTIN and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
In this appeal involving a discovery dispute, we are called upon, among other things, to attempt to resolve difficulties arising from the action of a Law Division judge in conducting an in camera review of defendants' privileged documents and then sua sponte releasing some of those documents, in redacted form, to opposing counsel without affording defendants the opportunity to seek review of the court's decision to release the privileged material. We reverse and remand with instructions.
Plaintiffs, John Terrell, Myron McPherson, and Gene Key are all present or former employees of defendants Schweitzer-Mauduit International, Inc. and Kimberly Clark Corporation. On April 2, 1997, plaintiffs filed a complaint alleging that during their employment with defendants, they were subjected to adverse employment actions and a hostile work environment on the basis of their race in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to 10:5-49 ("LAD"). Defendants filed their answer and affirmative defenses to that complaint on June 2, 1997.
Before the complaint was filed plaintiffs sent defendants a demand letter on October 15, 1996, together with a draft of the complaint they planned to file claiming that defendants were in violation of the LAD. After receiving this demand letter, defendants enlisted the services of Barbara Zausner Tener, an independent investigator, to examine plaintiffs' claims that a racially hostile work environment existed at defendants' facility in Spotswood, New Jersey, where plaintiffs worked, and to determine whether remedial action needed to be taken.
During late October and early November 1996, Ms. Tener conducted her investigation. Defendants contend that all the documents relating to her investigation were delivered to the plaintiffs in response to a subpoena that was served upon Ms. Tener.
Also before the complaint was filed, on November 25 and December 4, 1996, defendants' attorneys, Suzanne M. Cerra and Patrick M. Stanton, from the law firm of Stanton, Hughes, Diana, Salsberg, Cerra and Mariani, P.C. (Stanton Hughes) met with and interviewed certain employees from defendants' Spotswood facility. Specifically, one or both of them interviewed Greg Benedict, Ted Moskal, Ed Lunski, Paul Vander Heyden, Brad Byers, Dave Connover, Clyde Funt, Ed Pinella, and Roger Kadash, for the purpose of gathering factual information as a basis for providing legal advice to defendants with respect to the merits of plaintiffs' claims and assisting in preparation for any potential litigation.
Defendants maintain that they did not in any way supervise or direct the Stanton Hughes interviews of defendants' employees. In their meetings with the employees, Stanton and Cerra took notes on the substance of their discussions. Cerra prepared nine sets of handwritten notes from the meetings with each of the above-mentioned employees. Stanton compiled only seven sets of notes reflecting the contents of the interviews he had with defendants' employees. Stanton did not meet with Benedict and did not prepare any notes from the interview with Moskal. Cerra also prepared typed memoranda for five of the employee interviews, summarizing her handwritten notes from those interviews. According to defendants, all the interview notes and memoranda relating to the interviews *669 of defendants' employees were retained by Stanton Hughes in its litigation files.
Plaintiffs filed their complaint against defendants in April 1997, and defendants answered the complaint on June 2, 1997. Plaintiffs then served requests upon defendants for the production of documents on June 30, 1997, August 20, 1997, March 12, 1998, and June 22, 1998. Defendants interposed certain objections to these document production requests, and consistent with their objections did not furnish all the documents demanded by plaintiffs. To elaborate, plaintiffs served an initial Request for Production of Documents upon defendants on June 30, 1997. On September 9, 1997, defendants provided documents in response to fourteen of those requests. Defendants set forth a number of objections to plaintiffs' document requests, however, claiming that they were too broad, the information sought was privileged or "otherwise immune from discovery," and the requests called for confidential or proprietary information.
On August 20, 1997, plaintiffs served upon defendants a Second Request for Production of Documents, in which plaintiffs sought the names, addresses, telephone numbers, and dates of employment for employees at a specified facility of defendants. When defendants responded to this document request on September 9, 1997, they raised objections similar to those they had asserted with respect to plaintiffs' initial document request, claiming that the request was overly broad, that the information sought was privileged or "otherwise immune from discovery," and that requests called for confidential or proprietary information.
On March 12, 1998, plaintiffs sent their Third Request for Production of Documents, seeking:
All documents, notes and/or memos which reflect and/or refer to any communications with Defendants' employees or former employees in connection with this case, by Defendants, Defendants' agents, and/or Counsel for Defendants in preparation for trial, with all mental impressions and/or other items protected by R. 4:10-2 redacted by Counsel for Defendants.
On April 28, 1998, defendants refused to comply with this request, claiming attorney-client and work-product privileges.
On June 22, 1998, plaintiffs submitted their Fourth Request for Production of Documents to defendants. Thereafter, defendants filed a motion for a protective order in relation to plaintiffs' Fourth Request for Documents returnable before August 7, 1998. On or about July 28, 1998, plaintiff filed a cross-motion to compel discovery in opposition to defendants' motion also returnable on August 7, 1998. These motions were adjourned until October 9, 1998.
On November 20, 1998, the Law Division judge entered an order directing defendants to produce for her in camera review documents that plaintiffs had previously requested. Specifically, she ordered that:
the Court shall conduct an in camera review of the materials to determine whether there are separate investigations, if any privilege attaches or is waived, and determine if portions may be segregated excluding [sic] mental impressions or strategies (if the Court determines no privilege existing).
Defendant must identify any specific document it clearly maintains being privileged in its entirety or specific portions of others. Also identify any individuals that would be claimed to be part of the management therefore "the client."
*670 In addition, the Law Division judge ordered defendants to produce all relevant documents in relation to Ms. Tener's report that had not yet been provided to plaintiffs. Defendants were further directed to turn over their "privilege log" to plaintiffs, something that defendants had not yet done. The judge also set forth an oral opinion which explained the basis of her order.
Defendants submitted two categories of documents to the Law Division judge for in camera inspection on February 16, 1999. Category One consisted of all documents related to Barbara Zausner Tener's investigations in October and November of 1996. Category Two consisted of defendants' attorneys' investigation documents, that is, the documents related to the interviews by the Stanton Hughes lawyers after defendants received a demand and draft complaint from plaintiffs.
According to defendants, all the Category One documents had been produced to plaintiffs prior to being submitted to the judge for her in camera review, pursuant to a subpoena plaintiffs had served upon Ms. Tener. The Category Two documents were comprised of the typed memoranda and handwritten notes of the two lawyers, Stanton and Cerra, prepared during and after the interviews with defendants' employees. Defendant claims that the Category Two documents were protected from disclosure by both the attorney-client privilege and the work product doctrine. Upon submitting these documents to the Law Division judge, defendants requested that they be afforded the opportunity to submit for review any ruling calling for the Category Two documents to be released. Discovery in the matter was stayed pending the in camera review of both categories of documents by an order dated March 16, 1999.
Inexplicably, when the Law Division judge had completed her review of the documents submitted to her for review, she entered an order on February 28, 2001, and without notice released to plaintiffs in redacted form some of the very documents that had been submitted to the trial court for the in camera review, namely, counsel's five typed memoranda of interviews. Moreover, according to defendants, they did not receive the order authorizing the release of those documents until March 9, 2001, and thus were not afforded the opportunity of challenging this order before the documents were released to plaintiffs.
On March 29, 2001, defendants filed a Motion for Leave to appeal the Law Division judge's February 28, 2001 interlocutory order, pursuant to R. 2:5-6. By an order dated April 23, 2001, we granted defendant's Motion for Leave to Appeal. On May 10, 2001, discovery in this matter was stayed pending the resolution of this appeal pursuant to R. 2:9-5.[1]
In addressing the trial court's action in releasing to plaintiffs' counsel documents which defendants claim were protected from disclosure by the attorney-client privilege and work product doctrine, we note that in general we will defer to a trial court's disposition of discovery matters unless the trial court has misapplied its discretion. Connolly v. Burger King Corp., 306 N.J.Super. 344, 349, 703 A.2d 941 (App.Div.1997) (quoting Payton v. New Jersey Turnpike Authority, 148 N.J. *671 524, 559, 691 A.2d 321 (1997)). Deference to a trial court's decision is not appropriate, however, if that decision was based upon a mistaken understanding of the applicable law. Connolly, supra, 306 N.J.Super. at 349, 703 A.2d 941.
Defendants maintain that the trial court erred by releasing the Category Two documents to plaintiffs, and they are correct. These documents were protected by the work product doctrine, as is made clear by our decision in Miller v. J.B. Hunt Transport, 339 N.J.Super. 144, 770 A.2d 1288 (App.Div.2001). As the Law Division judge herself appeared to recognize, the threat of litigation in this matter clearly had arisen by the time the interviews were conducted. If there was any question before Miller as to whether such materials were protected, Miller put such doubts to rest. Unfortunately, we have no explanation by the Law Division judge for the determinations she made relative to the documents' redaction and release, albeit almost two months before Miller was decided. Indeed, we have been unable to perceive a sustaining rationale either for her ruling or for her release of the documents before defendants had a chance to test the ruling. We note that plaintiffs' brief is conspicuously silent concerning Miller despite our reference to that authority in our order granting leave to appeal.
Accordingly, there was no basis for requiring release of the notes, summaries or reports prepared by the attorneys retained to handle the case. We have no basis for concluding on the record before us that the involvement of defendants' counsel here, or the creation or retention of their notes, represented a subterfuge for shielding an employer investigation that could reasonably give rise to a basis for refusing to apply the work product privilege. Intrusions into and breaches of the privileges implicated here are not to be lightly tolerated. Obviously, moreover, they are not unilateral and can cut both ways. Today it is the employer who was disadvantaged; tomorrow it may be the employees or a union.
In sum, the documents were privileged and immune from disclosure. We have, however, no explanation and no easy solution for the Law Division judge's unfortunate sua sponte conduct in releasing the redacted memoranda before defendants had any chance to seek review of her ruling. Defendants maintain that they have been precluded from receiving a fair adjudication of their case, and that because the trial court improperly disclosed privileged documents that should not have been released we should take steps to minimize the damage that has allegedly resulted. We have no objection to taking reasonable steps to that end, but when the cat is already out of the bag that goal is not readily achievable, if it is achievable at all. Defendants request, for example, that we order plaintiffs' counsel to return all copies of the memoranda that were released by the trial court and all documents that reflect information contained in the memoranda. Defendants further request that plaintiffs' counsel be directed to certify that they have not retained any copies of or disclosed the contents of the memoranda, and that they be enjoined from revealing the contents of the memoranda to anyone.
We have concluded, in the procedural setting that confronts us, that the following is as much as we reasonably can accomplish. In reversing the Law Division judge, we specifically direct the return by plaintiffs, their counsel, and agents of all the in camera review documents, and all copies thereof that were released sua sponte by the judge. We further direct that plaintiffs and their attorneys and *672 agents take all possible steps to cleanse their files and their case strategies of the documents that were released by the trial court and all documents that reflect information contained therein. All of them are also directed to certify that they have not retained any copies nor have they disclosed the contents of the documents, and they are directed not to use the contents of these documents for any purpose or to reveal them to any person. We further expressly require the trial court to take responsibility on a continuing basis for employing whatever means are appropriate to protect defendants from the impact of the court's error, short of disqualifying plaintiffs' counsel. We further direct that the trial court make specific findings as to the compliance or non-compliance by plaintiffs and by plaintiffs' counsel and their agents with our directives in this opinion and that that court fashion and enter effective procedures and safeguards to insure the return, non-disclosure, and non-use of the documents as to which we have ruled, and of all copies or excerpts thereof. Such protections against non-use and non-disclosure shall include anything that plaintiffs and plaintiffs' counsel and their agents learned or gleaned from their possession or knowledge of these documents. We commented on the need to "level the playing field" in Manorcare Health Services, Inc. v. Osmose Wood Preserving, Inc., 336 N.J.Super. 218, 236, 764 A.2d 475 (App. Div.2001), and although the context of that case was radically different from this one, the same overriding objective applies here.
We do, however, reject defendants' request for the disqualification of plaintiffs' counsel as being without merit. Defendants have not demonstrated any impropriety on the part of plaintiffs' counsel that would warrant such a severe measure. The harm was initiated by the trial court's conduct in releasing the redacted documents before defendants had had any chance to appeal its ruling. It would be unfairly punitive indeed for us to disqualify plaintiffs' lawyers from representing their clients simply because that representation gave them access to those documents.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] Defendants assert they were not aware that their Motion for Leave to Appeal had been granted until they received an Order of Dismissal in December of 2001. Defendants sought to vacate that Order of Dismissal and to reinstate their appeal, asserting lack of notice of the April 23, 2001 order. On January 28, 2002, we reinstated defendants' appeal.