**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-3372-23
                        A-0234-24

LOKAL STOCKTON LLC,

    Plaintiff-Appellant,

v.

CITY OF CAPE MAY, CITY OF
CAPE MAY HISTORIC
PRESERVATION COMMISSION,
and CITY OF CAPE MAY
ZONING BOARD OF
ADJUSTMENT,

    Defendants-Respondents.

_____

Argued December 11, 2025 – Decided December 22, 2025

Before Judges Mawla, Bishop-Thompson, and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0120-22.

Robert S. Baranowski, Jr., argued the cause for appellant (Hyland Levin Shapiro, LLP, attorneys; Robert S. Baranowski, Jr., and Peter A. Chacanias, on the briefs).

Christopher Gillin-Schwartz (Gillin-Schwartz Law, LLC) argued the cause for respondents City of Cape May and City of Cape May Historic Preservation Commission.

Victor R. Garlitos, III, argued the cause for respondent City of Cape May Zoning Board of Adjustment (KingBarnes, attorneys; Richard M. King, Jr., and Marisa J. Hermanovich, on the brief).

PER CURIAM

These are consolidated appeals. In A-3372-23, plaintiff Lokal Stockton LLC appeals from an August 25, 2023 order dismissing plaintiff's prerogative writs claims against defendants City of Cape May, City of Cape May Historic Preservation Commission (HPC), and City of Cape May Zoning Board of Adjustment; a related order dated December 19, 2023, denying plaintiff's motion to quash a subpoena; and a June 26, 2024 order granting defendants summary judgment and dismissing the remainder of plaintiff's claims. In A-0234-24, plaintiff challenges an August 9, 2024 order adjudicating its request for a stay pending appeal and granting defendants' cross-motions to enforce litigants' rights. We stayed both matters pending appeal and now vacate the stay and affirm for the reasons expressed in this opinion.

In 2018, plaintiff purchased property in the Cape May historic district and applied for a construction permit. The application was referred to the HPC, which held a hearing and considered testimony from plaintiff's project manager, who worked for an architectural firm, and appeared on plaintiff's behalf. The HPC passed a resolution (the 2018 HPC Resolution) granting plaintiff a certificate of appropriateness (COA) pursuant to certain conditions agreed to by the project manager. Paragraph four of the resolution recited the following reasons for the HPC's action and conditions for future approval:

> a. The applicant previously received conceptual approval. The final application has made two changes: 1) rail detail; 2) stairs.
>
> b. The subject property has been much modified over the years. The proposed renovations are an improvement.
>
> c. The proposed railing system is too contemporary for this building. The applicant has agreed to redesign the railing system in the Chippendale style.
>
> d. The applicant has agreed to retain the original front stair bridge design.
>
> e. Other materials to be used will be a standing seam metal roof, less than one-half inch; Anderson Woodwright 400 Series windows;

3

wood doors; brick foundation; wood fences; IPC decking.

f. Applicant has agreed to use all cedar clapboard siding. No Azec will be utilized, rather wood materials.

g. Applicant will submit lighting plan, foundation, pavers, and sealed architectural plans to Review Committee for final approval.

h. All applicable design standards will be met.

In January 2019, plaintiff sought certain variances from the Cape May Planning Board, including a variance for the surface material to pave the parking area. Plaintiff's co-owners and the project manager relied upon the 2018 HPC Resolution as part of the variance application. One co-owner represented the project was consistent with the resolution's requirements regarding the railing and the stairs. The Planning Board voted to permit pavers in the parking area and reiterated HPC approval was required for the renovations.

In March 2019, the Zoning Board's engineer reviewed plaintiff's application for compliance and notified both the Zoning and Planning Boards plaintiff's architectural plans were revised to comply with the HPC conditions. The engineer stated final approval from the HPC was required to deem the application complete.

4

Plaintiff made renovations and created a boutique micro-hotel with eight apartment-style hotel rooms. The engineer and other city employees inspected the property multiple times between April and December 2019. A July 9, 2019 inspection report questioned whether construction of a block wall was consistent with the plans.

On July 19, 2019, the engineer inspected the property and notified plaintiff's contractor of "non-compliant site plan issues," but the contractor stated he was doing what the owner wanted. The engineer also noted plaintiff used clamshells for the parking area, contrary to the Planning Board's approval of pavers. The contractor believed the owner planned to seek a variance for using the clamshells and requested a temporary certificate of occupancy (TCO) to open the hotel in July 2019.

On July 24, 2019, the engineer informed the city construction official the parking surface did not comply with the architectural plans but recommended the issuance of a TCO. A TCO was issued two days later and subsequently renewed on multiple occasions between August 25, 2019 and June 3, 2024.

In August 2019, plaintiff again sought variances and site-plan approval from the Planning Board. The Board noted plaintiff had constructed a block wall, which was not previously approved, and a railing system, which did not

comply with the conditions in the 2018 HPC Resolution. Plaintiff agreed to return to the HPC for approval of the deviations from the resolution's conditions.

The Planning Board also addressed plaintiff's use of clamshells for the parking area. The city engineer explained clamshells were prohibited because they were a potential safety hazard. On September 10, 2019, the Board passed a resolution denying plaintiff's request for variances and referred the matter to the HPC to decide whether the changes in the plans were acceptable.

Plaintiff applied to the HPC for final approval of the renovations. In December 2019, the engineer inspected the property and found the fencing and wall did not comply with HPC requirements, the parking surface used clamshells instead of the approved pavers, and the architectural construction of the building was inconsistent with plaintiff's site plan.

On January 6, 2020, the HPC considered plaintiff's application for final site plan approval. Plaintiff presented the testimony and report of an expert in historical reconstruction who opined the property contributed to the historic district because many renovations were made in the twentieth century, which altered the historical character of the building. The expert also claimed the property was not in the historic district because it was across the street from a cinder block building and a "massive" parking lot.

A-3372-23

One of plaintiff's co-owners testified he was unaware of the August 20, 2018 HPC hearing or the conditions the HPC imposed in the resultant resolution because the project manager "kind of went rogue." The owner claimed he never agreed to meet the HPC's conditions. Regardless, he asserted the conditions were met because the city issued permits for all the construction.

The HPC denied plaintiff a COA because multiple items did not comply with the standards required in the historic district. Plaintiff failed to: design the railing system in the Chippendale style, retain the original front stair bridge design, utilize a standing seam metal roof, and install the pavers. Also, plaintiff constructed a fence and a wall without HPC approval. The HPC rejected the expert's conclusion the property should not be considered part of the historic district. Its findings were memorialized in a resolution dated April 20, 2020 (the 2020 HPC Resolution).

Plaintiff appealed from the HPC's determination claiming it was arbitrary, capricious, and unreasonable. In June 2020, the Zoning Board informed plaintiff its appeal application was incomplete. As of February 2022, it was still incomplete. That month, the HPC's compliance officer corresponded with the owner to resolve the dispute but was unsuccessful. The compliance officer advised the owner, plaintiff was in violation of the HPC standards for the:

foundation, roof, railing, front stair bridge, wood fencing, block wall, parking area, and HVAC. The changes plaintiff made without HPC approval violated city ordinances and had to be corrected. The compliance officer advised no further TCOs would be issued after the expiration of the then-current TCO on February 28, 2022.

In April 2022, plaintiff filed a complaint in lieu of prerogative writs, which alleged: the 2018 HPC Resolution was void because plaintiff was not represented by counsel during the hearing preceding issuance of the resolution (count one); the denial of plaintiff's application was arbitrary, capricious, and unreasonable (count two); defendants should be equitably estopped from denying plaintiff a COA (count three); laches (count four); and the court should grant plaintiff a declaratory judgment (count five) and a preliminary injunction (count six). The trial judge granted plaintiff preliminary injunctive relief and directed defendants to continue granting plaintiff additional TCOs until final adjudication of the matter. He also ordered plaintiff to submit whatever was necessary to perfect its appeal before the Zoning Board.

On November 17, 2022, the Zoning Board decided plaintiff's appeal and passed a resolution finding the 2018 HPC Resolution was not arbitrary, capricious, or unreasonable. The Board noted plaintiff's project manager

appeared before the HPC and made certain agreements, and the conditions set forth by the HPC were a valid exercise of its discretion. Plaintiff proffered testimony from a second expert, but the Board refused to consider it because it was not presented to the HPC.

Plaintiff amended its complaint and requested: the Board be estopped from limiting its appeal to the record made before the HPC (count five); a preliminary injunction (count six); a finding the Board's denial of plaintiff's appeal was arbitrary, capricious, and unreasonable (count seven); a declaratory judgment (count eight); a finding the Board violated 42 U.S.C. § 1983 (count nine) and due process (count ten); and a finding the city ordinance violated the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163 (count eleven).

The trial judge bifurcated the matter and ruled he would first decide plaintiff's prerogative writs claims; counts one, two, five, seven, nine, ten, and eleven. On August 25, 2023, the judge issued a written opinion dismissing plaintiff's prerogative writs claims.

The judge concluded he did not need to address the circumstances of the project manager's appearance before the HPC or whether counsel was required in HPC proceedings because plaintiff had ratified the 2018 HPC Resolution and its conditions through its actions. The record showed both co-owners "testified

alongside this same 'rogue' project-manager in a Planning Board hearing several months after the 2018 HPC hearing." Also, "[p]laintiff's counsel submitted the HPC . . . [r]esolution for the Planning Board's consideration."

The judge concluded "even if [p]laintiff was not aware of the 2018 HPC hearing and . . . [r]esolution at the time it occurred, [p]laintiff was certainly aware of these acts when they appeared before the Planning Board." He found "[p]laintiff expressly ratified this conduct through relying on the conditional approval it received through the 2018 HPC Resolution as a means to attain further approval from the Planning Board." Indeed, "[p]laintiff relied on the HPC . . . [r]esolution when it was . . . beneficial to [it] and cannot now claim ignorance as to its contents." Plaintiff's actions were "inconsistent with any position other than one indicating an intent to adopt the acts of their project-manager and the resolution he procured on behalf of [p]laintiff." The judge observed "the Planning Board's resolution specifically noted that the [p]roperty must comply with the requirements of the HPC and that HPC approval is required. . . . Plaintiff's counsel did not object to the Planning Board's findings or resolution."

The trial judge also dismissed plaintiff's argument the HPC's denial of a COA for the hotel was arbitrary, capricious, and unreasonable. He reasoned

10

because the 2018 HPC Resolution granting plaintiff conditional approval was valid, it was not arbitrary for "the HPC to look at the hotel 'as-built' and determine it deviated from the specifications or conditions . . . in the 2018 HPC Resolution."  Moreover, the HPC considered and rejected plaintiff's expert testimony "that the building 'as-built' conformed to the HPC guidelines . . . because [the expert] was focused on the Victorian era of homes and his belief that the site should not have been considered a 'contributing' building."  The HPC explained a historic preservationist, not the HPC, inspects the buildings "and determines based on the property's features whether it is a 'key building,' 'contributing building,' or [a] 'non-contributing building.'"

The judge noted "[a] property owner challenging their property's designation must do so in a separate appeals process."  Therefore, the HPC did not act in an arbitrary, capricious, or unreasonable manner because its resolution listed the deficiencies of plaintiff's application and both the resolution and the record showed it "was willing to accept certain aspects of the hotel 'as[-]built' if [p]laintiff was willing to alter others to be in conformity with the 2018 HPC Resolution."

The judge rejected plaintiff's claims regarding the validity of a city ordinance and whether the Zoning Board's determination was arbitrary,

capricious, or unreasonable, which we need not discuss here. He then ordered counts three, four, and eight should proceed to discovery, and maintained the preliminary injunction regarding the continued issuance of TCOs sought in count six.

During discovery, defendants subpoenaed plaintiff's project manager. Plaintiff moved to quash the subpoena on grounds it sought privileged information. It argued the subpoena was overly broad because the project manager appeared before the Planning Board as an expert and the information discoverable was subject to the work-product privilege. Plaintiff also claimed the attorney-client privilege extended to the project manager. Alternatively, it argued for a protective order to enable its attorney to review the documents sought for privileged communications.

The judge denied the motion to quash on December 19, 2023. He rejected the work-product privilege argument, reasoning the project manager's materials and appearances on behalf of plaintiff "were not prepared in anticipation of litigation, but rather for the repair and reconstruction of the hotel." The privilege was also inapplicable because plaintiff persistently claimed the project manager was a rogue architect rather than its expert witness. The attorney-client privilege

12

did not apply because plaintiff's attorney did not retain the project manager. "Rather, he was employed by [plaintiff] itself as an architect."

The project manager was deposed and confirmed he managed plaintiff's project and worked for an architectural firm. He testified he attended the August 2018 HPC hearing and advised plaintiff's owners about the changes required by the HPC. When asked whether plaintiff had given him authority to agree to the conditions set by the HPC, he answered: "They wanted me to walk away from that hearing with approval, so I would say yes."

In May 2024, defendants moved for summary judgment. In opposition, plaintiff argued: it was unaware of the conditions in the 2018 HPC Resolution; the issuance of building permits constituted de facto approval by the HPC; it reasonably believed there was approval because the city failed to bring violations to its attention; equitable estoppel and laches barred defendants from requiring plaintiff to construct the hotel pursuant to the HPC resolution; and summary judgment was inappropriate because the declaratory judgment, equitable estoppel, and laches issues required the judge to assess credibility.

The trial judge issued a written decision granting summary judgment and dismissed the remaining counts in plaintiff's complaint with prejudice on June 26, 2024. He found no genuine issues of material fact. Defendants were entitled

13

to summary judgment as a matter of law because it was undisputed "[p]laintiff's representative was aware of the required HPC approval for the final design of the . . . [h]otel." He rejected plaintiff's claim it was unaware of the conditions in the 2018 HPC Resolution because the deposition testimony of one of the owners showed they never bothered "to ascertain the necessary conditions [for] HPC approval. . . . [T]his inaction does not amount to a good faith or reasonable reliance on the issuance of building permits as de facto approval." There was "ample evidence suggesting [p]laintiff was on notice of the HPC conditions, and the TCOs were reissued under the understanding that the noncompliant aspects of the [h]otel must be brought into compliance with the HPC conditions."

Credibility was not an impediment to summary judgment because "the [c]ity made no representations to [p]laintiff that would suggest the building permit verified HPC approval of the nonconforming plans." Nor did the judge have to assess the credibility of the owners' claim that they understood the project was approved by speaking with the project manager because their deposition testimony confirmed they "did not [act] reasonably[,] and in good faith[,] rely upon representations of the [c]ity. Rather, [p]laintiff relied upon representations of its own agent and its own ignorance of the HPC approval conditions."

The judge also rescinded the May 26, 2022 order imposing preliminary restraints. He ruled defendants could compel plaintiff to reconstruct the hotel in accordance with the HPC conditions.

A-0234-24

On June 28, 2024, the compliance officer notified plaintiff the eight items, which violated the conditions in the 2018 HPC Resolution, remained outstanding, and plaintiff would be subject to a daily fine if they were not corrected. Plaintiff moved for a stay pending appeal. Defendants opposed the motion and cross-moved to enforce litigants' rights and compel plaintiff to comply with all eight items required for HPC approval.

On August 9, 2024, the trial judge denied the request for a stay, reasoning that requiring plaintiff to comply with the eight items would not impair or destroy its property. Therefore, plaintiff did not meet the legal standard for the imposition of injunctive relief under Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982). The judge observed plaintiff had been out of compliance with HPC conditions for nearly five years during which it had earnings from operating its hotel.

The judge granted defendants' motions to enforce litigants' rights but stayed enforcement until December 3, 2024, the date the TCO was set to expire.

Plaintiff was ordered to repair the eight items or reach an agreement with defendants regarding the repair of those items by that date.

## I.

## A.

In A-3372-23, plaintiff argues the judge erred when he found it ratified the 2018 HPC Resolution. It reiterates that it was an error to enforce the resolution because it was not represented by counsel at the hearing leading to the adoption of the resolution and the project manager was unauthorized to agree to the HPC's conditions. Therefore, the resolution was ultra vires.

Plaintiff reasserts its arguments regarding credibility and claims summary judgment could not be granted on the laches, declaratory judgment, and equitable estoppel claims. It claims the judge ignored evidence that: defendants failed to follow their own construction review process; plaintiff reasonably relied to its detriment on the TCOs defendants issued to it; and yet defendants blamed plaintiff for its non-compliance. Moreover, summary judgment was improper where the ruling rests on expert testimony, namely, the expert plaintiff hired to prove its building conformed with the historic district.

We review summary judgment orders de novo applying the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of

16

Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). If there is no genuine issue of fact, we then decide whether the trial court's ruling on the law was correct. Walker v. Atl. Chrysler Plymouth, Inc., 216 N.J. Super. 255, 258 (App. Div. 1987).

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01 (A.L.I. 2006). Furthermore, "[a] person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Ibid. "Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act; from inaction; or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." Martin Glennon, Inc. v. First Fid. Bank, N.A., 279 N.J. Super. 48, 60 (App. Div. 1995) (quoting Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 361 (1976) (citations omitted)).

Pursuant to these principles, we affirm the finding plaintiff ratified the conditions in the 2018 HPC Resolution for the reasons expressed in the trial judge's opinion. The arguments plaintiff reprises on appeal against ratification lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We similarly reject plaintiff's assertion the trial judge made credibility assessments or was required to make them to adjudicate the equitable estoppel, laches, or declaratory judgment claims. Summary judgment on these claims was predicated exclusively on the objective evidence in the record and credibility played no factor. Accepting as true that plaintiff was unaware of the 2018 HPC Resolution, the evidence showed plaintiff's counsel was in possession of the resolution as early as January 2019, when they submitted it to the Planning Board for a variance. Therefore, plaintiff's ratification extinguished the estoppel, laches, and declaratory judgment claims.

Plaintiff's argument defendant failed to adhere to its own construction review process was not relevant to the trial judge's decision. The relevant issue was the HPC's denial of approval due to plaintiff's failure to comply with the 2018 HPC Resolution. Nor did the judge's decision turn on the expert testimony because the testimony post-dated the resolution and was designed to question

18

the conditions imposed in the HPC resolution. As we recounted, plaintiff's expert argued the HPC's standards should not have even been applied to plaintiff because the property was in the historic district.

The grant of TCOs to plaintiff did not undermine the judge's ruling in favor of defendants. The record readily establishes the TCOs were granted to give plaintiff time to comply with the conditions of the 2018 HPC Resolution; nothing more, nothing less.

B.

Plaintiff argues the HPC's 2020 decision to deny a COA was arbitrary, capricious, and unreasonable because it was predicated upon compliance with the 2018 HPC Resolution rather than whether the completed hotel was consistent with city guidelines. It reiterates the renovations it completed were appropriate to the historical nature of the building's location. Plaintiff claims the judge also erred when he concluded it was unwilling to compromise with the HPC. It claims it did not willfully fail to cooperate with defendants. Instead, defendants frustrated plaintiff's efforts by first approving its application at the HPC and then requiring it to obtain approval from the Planning Board or the Zoning Board only to then indicate the actions of the latter boards could impact the HPC's final approval.

19

We review municipal-board decisions under "the same standard as the trial court." Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 614-15 (App. Div. 2007). This requires us to recognize that a board's "peculiar knowledge of local conditions" allows it "wide latitude in the exercise of delegated discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296 (1965)).

Therefore, "[w]e give deference to the actions and factual findings of local [b]oards." Hoboken for Responsible Cannabis, Inc. v. City of Hoboken Plan. Bd., 480 N.J. Super. 357, 371 (App. Div. 2024). We do not substitute our "own judgment for that of the municipal board invested with the power . . . to pass upon the application." Kenwood Assocs. v. Bd. of Adjustment, 141 N.J. Super. 1, 4 (App. Div. 1976).

Where a party contests the decision of a local board, we consider "whether the board could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005). A municipal board's decision "is presumptively valid, and . . . reversible only if arbitrary, capricious, and unreasonable." Smart SMR of N.Y., Inc. v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adjustment, 127 N.J. 152, 166-67 (1992)).

The MLUL defines the role of an HPC as follows:

> The historic preservation commission shall have the responsibility to:
>
> a. Prepare a survey of historic sites of the municipality pursuant to criteria identified in the survey report;
>
> b. Make recommendations to the planning board on the historic preservation plan element of the master plan and on the implications for preservation of historic sites of any other master plan elements;
>
> c. Advise the planning board on the inclusion of historic sites in the recommended capital improvement program;
>
> d. Advise the planning board and board of adjustment on applications for development pursuant to section 24 of this amendatory and supplementary act;
>
> e. Provide written reports pursuant to section 25 of this amendatory and supplementary act on the application of the zoning ordinance provisions concerning historic preservation; and
>
> f. Carry out such other advisory, educational and informational functions as will promote historic preservation in the municipality.
>
> [N.J.S.A. 40:55D-109.]

Having considered the record pursuant to these principles, we reject the argument the HPC's decision to reject the renovations performed by plaintiff was arbitrary, capricious, or unreasonable. The 2020 HPC Resolution

21

articulated ten reasons why plaintiff's building did not meet the standards for a historical building and why it denied plaintiff a COA. The testimony and evidence in the record supports the conclusions reached by the HPC. Plaintiff's arguments to the contrary lack merit.

C.

Plaintiff challenges the denial of the motion to quash. It reiterates the work-product privilege applied because the hearing before the HPC was like a trial and plaintiff's communications with the project manager were protected. We are unpersuaded and affirm for the reasons expressed in the trial judge's decision, and add the following comments with respect to the work-product privilege.

"[P]ursuant to Rule 4:10-2(a), parties may obtain discovery regarding any non-privileged matter that is relevant to the subject of a pending action or is reasonably calculated to lead to the discovery of admissible evidence." In re Liquidation of Integrity Ins. Co., 165 N.J. 75, 82 (2000). A nonparty may be compelled by subpoena to produce "books, papers, documents, electronically stored information, or other objects designated therein." R. 1:9-2. Rule 4:10-2(c) permits the sort of discovery allowed under

> R[ule] 4:10-2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for

that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In exercising its discretion over the discovery process, a trial court should "balanc[e] the beneficial effects of discovery against its disadvantages." State ex rel W.C., 85 N.J. 218, 224 (1981). To this end, the trial court may "quash or modify the subpoena," Rule 1:9-2, or order that "discovery not be had," Rule 4:10-3(a). We review such decisions for abuse of discretion. Bender v. Adelson, 187 N.J. 411, 428 (2006).

"In determining whether a document is protected from disclosure by the work-product privilege, the threshold question is whether the document was 'prepared in anticipation of litigation or for trial.'" Miller v. J.B. Hunt Transp., Inc., 339 N.J. Super. 144, 148 (App. Div. 2001) (alteration omitted) (quoting R. 4:10-2(c)). "If a document was prepared 'in the ordinary course of business' rather than in anticipation of litigation, it is not entitled to protection as work product." Ibid. (quoting Payton v. N.J. Tpk. Auth., 148 N.J. 524, 554 (1997)).

The record shows the documents sought from the project manager were not privileged because they were not prepared in anticipation of litigation. The documents were relevant because they went to the heart of the parties' dispute

23

about whether plaintiff was aware of the outcome of the August 2018 HPC hearing. The denial of plaintiff's motion to quash was not an abuse of discretion.

II.

In A-0234-24, plaintiff argues the trial judge erred when he concluded it did not meet the legal standard for injunctive relief under Waste Management of New Jersey, Inc. v. Union County Utilities Authority, 399 N.J. Super. 508, 519-20 (App. Div. 2008). Further, the judge's denial of a stay pending appeal was erroneous because plaintiff was required to repair the building or face significant fines or closure of its business while its appeal is heard. The judge did not consider plaintiff's likelihood of success on appeal from the summary judgment decision. He did not balance these equities when he denied injunctive relief. Plaintiff also asserts the judge erred when he granted defendants enforcement because there was no prior order obliging plaintiff's compliance, and defendants never sought affirmative relief to be entitled enforcement of litigant's rights.

These arguments are unpersuasive and, in the case of the injunctive relief and stay, largely moot given our affirmance in the companion appeal. However, some comment is necessary.

24

In Waste Management, we stated the issuance of an interlocutory injunction is an exercise of judicial discretion, and a court may "place less emphasis on a particular Crowe factor if another greatly requires the issuance of the remedy." Id. at 520. Notably, we held "when the public interest is greatly affected, a court may withhold relief despite a substantial showing of irreparable injury to the applicant." Ibid.

Pursuant to these principles, we discern no error because there was no evidence of irreparable harm to plaintiff by having to comply with the HPC's conditions. The expenditure or loss of money, in this case to properly renovate the property, certainly was not evidence of irreparable harm. Crowe, 90 N.J. at 132-33. Moreover, the trial judge properly balanced the public's interest in assuring plaintiff's compliance with the HPC standards and preserving the character of the historic district against the financial ramifications to plaintiff. The lengthy amount of time plaintiff had to comply with those standards or reach another resolution with defendants, while also being permitted to open and operate its hotel, does not convince us there was an abuse of discretion.

We reach a similar conclusion regarding plaintiff's challenge to the enforcement proceedings. Pursuant to Rule 1:10-3, a court has the inherent power to coerce a party into compliance with a prior order. Pasqua v. Council,

186 N.J. 127, 140 (2006).  We will not disturb a trial judge's exercise of authority under Rule 1:10-3 absent abuse of discretion resulting in injustice.  See Cunningham v. Rummel, 223 N.J. Super. 15, 19 (App. Div. 1988).

When plaintiff moved for a stay, defendants responded with a cross-motion to enforce litigant's rights and compel compliance with the HPC conditions and a separate cross-motion to compel plaintiff to install the pavers in its parking area.  As noted in the companion appeal, plaintiff was unsuccessful in challenging the conditions imposed by the HPC, and defendants not only prevailed on summary judgment and secured dismissal of plaintiff's complaint, but obtained an order rescinding the restraints imposed in favor of plaintiff, meaning defendants were entitled to enforcement of the HPC conditions.  Therefore, as a matter of fact and law, the trial judge could exercise his authority to grant defendants enforcement of litigant's rights and did not abuse his discretion.

## III.

Finally, the stay we issued in A-3372-23 and A-0234-24 is vacated.  To the extent we have not addressed an argument raised in either appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in A-3372-23 and A-0234-24.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division